ALBANY,
January, 1823.

BARKER
v.
The PEOPLE.

BARKER *against* THE PEOPLE.

IN ERROR to the General Sessions of the Peace in the city of *New-York*. From the return to the writ of error, it appeared, that *Jacob Barker*, the plaintiff in error, in *February*, 1822, was indicted at the General Sessions, for sending a challenge to *David Rogers*, to fight a duel. The indictment contained five counts; the four first counts were founded on the act, passed the 5th of *November*, 1816, entitled, " an act to suppress duelling," (sess. 40. ch. 1.) which declares, that if any person shall challenge another to fight a duel, &c. or shall accept a challenge to fight a duel, &c. or shall be the bearer of a challenge, &c. such person shall be deemed guilty of a public offence; " and, being convicted thereof, shall be incapable of holding, or being elected to any post of profit, trust, or emolument, civil or military, under this state." A *nolle prosequi* was entered on the fifth count. The plaintiff in error was tried on the indictment, at the General Sessions, in *May* last, and convicted. And the Court below, thereupon, gave judgment, that " he be incapable of holding, or being elected to any post of profit, trust, or emolument, civil or military, under the state of *New-York*."

*The act to suppress duelling, passed November 5, 1816, (sess. 40. ch. 1.) which declares, that any person convicted of challenging another to fight a duel, &c. " shall be incapable of holding, or being elected to any post of profit, trust, or emolument, civil or military, under this state," is constitutional; and a conviction and judgment of disqualification under it, are, therefore, legal and valid.*

*The plaintiff in error*, in proper person, submitted the following questions: 1. Whether the act under which he was convicted, was not contrary and repugnant to the Constitution of the state, then existing? (Sec. 1. 9. 13. 33.)

2. Whether the act was not repugnant to the Constitution of the *United States?* (Art. VIII. of the Amendments.)

3. Whether it be not repugnant to the new, or amended Constitution of the state; and if so, abrogated after the last day of *February* last, because relating to the right of suffrage? *Vide Const.* Art. I. sec. 3. Art. II. s. 2. Art. V. s. 2. Art. VII. sec. 1. 13. Art. IX. sec. 1.

4. Whether the power to disfranchise a citizen, and render him ineligible to any office, has ever been granted by the people, except in the case of impeachment?

5. Whether the qualifications of an elector, and, consequently, of the person to be elected, can be changed or regulated by the legislature; the same being fixed by the Constitution?

6. Whether the power to disqualify a citizen is not confined, by the amended Constitution, to the case of a conviction for an infamous crime?

7. That the judgment in this case is clearly repugnant to the *sixth* article of the amended Constitution, which declares, that " no other oath, declaration, or test," than the oath of office, " shall be required as a qualification for any office or public trust." The terms used are not synonymous. The word *test* has a most extensive meaning, and prohibits the establishing of any other rule by which the eligibility of an officer shall be determined, than that defined by the Constitution. Not only *test oaths* are prohibited, but all modes of ascertaining the qualifications of the person elected or appointed, which are not clearly provided by the Constitution. The provisions of the amended Constitution, relate to the *receiver*, as well as the *giver* of votes.

*Talcot*, Attorney General, contra.

SPENCER, Ch. J. delivered the opinion of the Court.

The plaintiff in error contends, that the judgment of the Sessions is erroneous; and that the act on which it is founded, declaring that such disability shall ensue, on a conviction for sending a challenge to fight a duel, is unconstitutional: 1st. As regards the original Constitution of this state. 2d. As regards the Constitution of the *United States;* and, 3d. As regards the amended Constitution of this state. The 1st, 9th, 13th, and 33d articles of the original Constitution of this state, are said to bear upon this question, and the statute is supposed to be in repugnance to the provisions of those articles. The first article forbids the exercise of any authority over the people, but such as shall be derived from, or granted by them. The powers of the state legislature are not conferred by any express grant, but result from the institution of a supreme legislature; and it is an axiom, that the legislature possess all power, not expressly forbidden

either by the Constitution of the state, or the *United States,*
which relates to the prevention of crime, or the well order-
ing of society. The ninth article constitutes the Assembly
judges of their own members. I presume, it is intended,
by the plaintiff, by referring to that article, to infer, that no
other power, not even the legislative, can devest the Assembly
of this right. If this be so, and it is not necessary to deny
it, the only consequence would be, that should the Assembly
consider the judgment as no disqualification, its operation
would be so far defeated, but not, necessarily, any further.
The thirteenth article forbids the disfranchisement of any
member of this state, unless by the law of the land, or the
judgment of his peers. If the duelling act is not otherwise
unconstitutional, then the injunctions of this article have
been complied with ; for the act is the law of the land, and the
verdict is the judgment of the plaintiff's peers. The thirty-
third article relates to judgments on impeachments, and re-
strains their operation to removal from office, and disquali-
fication to hold any place of honour, trust, or profit, under
this state. The application of this article to the question
before us, is not perceived. I am, therefore, of opinion,
that there is nothing in the original Constitution which the
act violates. When it was before the council of revision,
the objections which some of the council, and I was one of
them, had to the act, related to other parts of it, and not to
the one now objected to. The supposed repugnancy of
the act to the Constitution of the *United States,* as it is
urged, is to the eighth amendment, which declares, that cruel
and unusual punishments shall not be inflicted. The dis-
franchisement of a citizen is not an unusual punishment; it was
the consequence of treason, and of infamous crimes, and it
was altogether discretionary in the legislature to extend that
punishment to other offences.

The judgment rendered in the Court below, is supposed
to be erroneous, as repugnant to, and contravening the third
section of the first article, the second section of the second
article, the second section of the fifth article, the first and
thirteenth sections of the seventh article, and the first section
of the ninth article of the amended Constitution. The
third section of the first article, giving to the Senate and As-

sembly the right to judge of the qualifications of their members, has been commented on, as well as the second section of the fifth article, which relates to judgments on impeachments; and also the first section of the seventh article. The second section of the second article ordains, *that laws may be passed, excluding from the right of suffrage, persons who have been, or may be, convicted of infamous crimes.* The thirteenth section of the seventh article, among other things, ordains, that such acts of the legislature as were then in force, should be, and continue the law of this state, subject to such alterations as the legislature shall make concerning the same; but all such parts of the common law, and *such of the said acts, or parts thereof, as are repugnant to this Constitution, are hereby abrogated.* The first section of the ninth article ordains, among other things, that those parts of the amended Constitution which relate to the right of suffrage; the number of members of assembly thereby directed to be elected; the apportionment of members of assembly; the elections thereby directed to commence on the first *Monday* of *November*, 1822, should be in force, and take effect from the last day of *February* then next. The sixth article has also been relied on, which ordains, *that no other oath, declaration, or test, shall be required, as a qualification for any office or public trust,* than the one prescribed, which is to support the Constitutions of the *United States* and of this state, and faithfully to discharge the duties of the office, according to the best ability of the officer.

It may admit of much doubt, whether the legislature are not restrained from excluding from the right of suffrage, any other persons than such as have been, or may be, convicted of infamous crimes. The enumeration of offences, on the conviction for which power is given to the legislature, to exclude the persons convicted, by necessary implication, denies the power in any other cases. The offence of which the plaintiff has been convicted, is not an infamous one. The law has settled what crimes are infamous; they are treason, felony, and every species of the *crimen falsi*, such as perjury, conspiracy, and barratry. (*Peake's Evid.* 126, 127.) If this be so, then the inquiry is, whether the right of suf-

frage, necessarily implies the right of being voted for. The amended constitution does not prescribe the qualifications of members of assembly; and, with respect to senators, it requires only that they shall be freeholders. There are particular qualifications for a governor, but for all other offices, the constitution is silent as to qualification. I cannot think, that the right of voting and being voted for, are convertible terms; indeed, we see they are not, for a great class of voters are not required to be freeholders, and yet it is necessary to the qualification of a senator or a governor, that he should be a freeholder; and, with respect to the governor, he must be a native citizen of the *United States*, thirty years of age, and a resident within the state for five years. The right of suffrage is, therefore, distinct from the right of being eligible to an office.

As to the oath of office, prescribed by the 6th article, and the provision, that no other oath, declaration, or test, shall be required; it is contended, that the word test has a most extensive meaning, and prohibits the establishing any other rule by which the capacity of a person to hold an office shall be determined, than that defined, the oath of the person appointed or elected. I cannot accede to this: In my judgment, the exclusion of any other oath, declaration, or test, as a qualification for an office or public trust, means only, that no other oath of office shall be required. It was intended to abolish the oath of allegiance and abjuration, or any political or religious test, as a qualification. The provision, that no other oath is to be required as a test, imports nothing with respect to the other qualifications. In the case of a person elected a senator, or a governor, the oath has no reference to the qualifications required, and they may be inquired into by some other tribunals. If an alien should be elected, he can well take the oath; but surely, the question whether he could hold the office would be open to inquiry.

Upon the whole, it appears to us, that there exists no constitutional objection to the conviction; and the judgment must be affirmed.

Judgment affirmed.