## Commonwealth *versus* Allen, Huhn and Shane.

> | 70 | 465 |
> |----|----|
> | 177 | 115 |

1. An Act of Assembly provided that no councilman, &c., of any municipality, &c., should at the same time be surety for a treasurer, &c., and for violating this provision he should forfeit his membership in such municipality, be guilty of misdemeanor, and on conviction be fined. Another act provided that the councils of Philadelphia should " in like manner as the legislature, judge and determine the qualification of their members." Members of council were sureties for a city treasurer. *Held*, that this was a forfeiture of their office as councilmen, and that the courts have jurisdiction to inquire of the forfeiture in such case.

2. The councils are not a legislature; they do not make laws; their members are not legislators with their constitutional privileges and immunities.

3. The forfeiture arose from the unlawful relation of surety and councilman; not upon conviction of the misdemeanor.

4. Quo warranto is a proceeding at law, and the fact of the defendant's right to office is triable by a jury; conviction is unnecessary to give jurisdiction.

5. The council may refuse a seat to a member who is surety, &c., but their neglect to make the inquiry is not a bar to legal proceedings to declare a forfeiture.

6. The offence continues as long as the defendant is surety and councilman at the same time.

7. The power of councils to impeach, try and remove a member for the misdemeanor, is not incompatible with the judicial power to oust an usurping officer or one holding over.

8. Act of March 21st 1806, not applicable to this case.

February 2d 1872. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

20 P. F. SMITH—30

[Commonwealth *v.* Allen.]

Error to the Court of Common Pleas of *Philadelphia*: No. 228, to January Term 1872.

This was an information in the nature of a quo warranto, issued November 22d 1871, upon the suggestion of F. Carroll Brewster, Attorney-General, against William S. Allen, Henry Huhn and Nicholas Shane.

The suggestion set out:— * * * " That Joseph F. Marcer was elected treasurer of the city of Philadelphia on the second Tuesday of October, A. D. 1869, and accepted the same, was duly qualified, and entered upon the duties of the said office on the first day of January, A. D. 1870. Prior to that date, to wit, upon the 16th day of December, A. D. 1869, he filed, in the office of the solicitor of the city of Philadelphia, a bond in the sum of $100,000, conditioned for the faithful performance of his duties as such treasurer, said bond having been executed by all whose names are therein, and the warrant of attorney attached thereto. That said warrant is of record in the District Court, &c.; and it appears by said record that the sureties for the said city treasurer, among others, are William S. Allen and Henry Huhn, who entered upon the duties of the office of councilmen of the said city on the first Monday of January, A. D. 1871; and Nicholas Shane, who entered upon the duties of councilman on the first Monday of January 1870; and that by a certain Act of Assembly, approved March 31st 1860, § 66, Pamph. L. 400, it is enacted that ' It shall not be lawful for any councilman, burgess, trustee, manager or director of any corporation, municipality or public institution, to be at the same time a treasurer, secretary or other officer, subordinate to the president and directors, who shall receive a salary therefrom, or be the surety of such officer; nor shall any member of any corporation or public institution, or any officer or agent thereof, be in any wise interested in any contract for the sale or furnishing of any supplies or materials to be furnished to, or for the use of, any corporation, municipality or public institution of which he shall be a member or officer, or for which he shall be an agent, nor directly nor indirectly interested therein, nor receive any reward or gratuity from any person interested in such contract or sale; and any person violating these provisions, or either of them, shall forfeit his membership in such corporation, municipality or institution, and his office or appointment thereunder, and shall be held guilty of a misdemeanor, and, on conviction thereof, be sentenced to pay a fine not exceeding $500.' And the said councilmen, since the dates respectively aforesaid, have exercised, and do still exercise, the office, rights and powers of councilmen of the city of Philadelphia, without any lawful warrant or authority; wherefore, the said attorney-general suggests that the court do award a writ, directed to the sheriff of Philadelphia county, commanding him to summon the said William S. Allen,

[Commonwealth *v.* Allen.]

Henry Huhn and Nicholas Shane, so that they be and appear before the said court, on a day certain, to show by what warrant they claim to have, use and exercise the office, right and powers aforesaid."

The defendants demurred, and assigned the following causes of demurrer :—

1. That the said court has no jurisdiction to hear and determine the complaint as contained in the information.

2. That the alleged forfeiture of the said offices of the defendants, as councilmen of the city of Philadelphia, as set forth in the said information, is a matter affecting the qualification of the defendants further to hold and exercise the said offices, and the franchises, rights and privileges appertaining thereto ; that by the thirty-fifth section of the act approved February 2d 1854, entitled " A further supplement to an act entitled an act to incorporate the city of Philadelphia," it is provided that, " the Select and Common Council, respectively, shall in like manner, as each branch of the legislature of this Commonwealth, judge and determine upon the qualifications of their members ;" and that therefore the proper tribunal, designated by said act, to judge and determine the defendants' right to hold and further exercise said offices, is the Common Council of the city of Philadelphia—being one of the legislative bodies thereof, of which the defendants were, prior to and at the time of the said alleged forfeiture, and now are, duly qualified members.

3. That the said information charges the defendants with the commission of a misdemeanor or malfeasance in their said office as councilmen of the said city—which charge or complaint can be heard and determined only in the manner provided by the 45th section of the said Act of February 2d 1854, wherein a distinct and specific remedy by impeachment is provided in all cases where officers of the said city are elected and hold their offices by virtue of an election by the qualified voters of the said city, namely, " That the officers elected by the qualified voters under this act shall be subject to removal from office on impeachment for misdemeanor in office, or other sufficient cause, on charges to be preferred by the Common Council and tried by the Select Council, in manner prescribed by the constitution and laws of this Commonwealth as to the impeachment by the House of Representatives and trial thereof by the Senate. All officers shall be subject to removal for sufficient cause, in such manner as councils shall determine."

4. That by the terms of the forty-fifth section of the said act of 2d of February 1854, the defendants are not " subject to removal " from their said offices until after their trial and condemnation on impeachment, duly prosecuted in the manner presented in the said statute.

5. Because the said statutory remedy by impeachment must be

[Commonwealth *v.* Allen.]

pursued in all cases of elective offices where the complaint charges the commission of an official act incompatible with the right further to hold and exercise such offices sought to be forfeited; consequently the writ of quo warranto will not lie.

The Court of Common Pleas gave judgment for the defendants on the demurrer.

The Commonwealth removed the case to the Supreme Court, and assigned the judgment thus entered for error.

*W. H. Rawle* and *F. C. Brewster*, Attorney-General (with whom was *J. J. Ridgway*, Jr.), for Commonwealth, plaintiff in error.—When a question is really *not* matter of privilege, the jurisdiction of the courts will not be ousted by the declaration of Parliament that it *is* matter of privilege: Stockdale *v.* Hansard, 11 Ad. & Ellis 253. Where a statute declares that the commission of a certain act shall work a forfeiture of office, the jurisdiction of the courts will not be ousted by being told that it is a mere matter of *qualification:* Regina *v.* Paty, 2 Lord Raymond 1105; Murray's Case, 1 Wils. 299; Lord Mayor's Case, 3 Id. 205; Burdett *v.* The Speaker, 14 East 1; Rex *v.* Hobhouse, 2 Chitty 207.

Where a statute declares a thing to be void—an office to be forfeited, and therefore gone—there is nothing to try; the house has no privilege, and the jurisdiction of the courts attaches to carry out the law by judgment of ouster in quo warranto: Commonwealth *v.* Pike Beneficial Society, 8 W. & S. 247; Queen *v.* Bolton, 1 Queen's Bench 66; Ex parte Amy Long, 29 Eng. Law & Eq. 194; Queen *v.* Grant, 14 Queen's Bench 43; Queen *v.* Evans, 3 Ellis & Black. 363; Society *v.* Vandyke, 2 Wharton 309; Toram *v.* Association, 4 Barr 519; Com. *v.* Leech, 8 Wright 332; Lamb *v.* Lynd, Id. 336.

The forfeiture occurs whenever the councilman is *at the same time* a surety; and it is immaterial whether he was surety before and councilman afterwards, or councilman before and surety afterwards. The moment the two occur, the forfeiture comes in, and the court has jurisdiction to enforce the forfeiture by quo warranto: Cleaver *v.* The Commonwealth, 10 Casey 284.

*W. Ernst* and *J. C. Bullitt* (with whom was *J. I. Doran*), for defendants in error.—The councils being the sole judge of the qualifications of its members, and having in their hands the remedy to impeach and expel these defendants for this or other misdemeanors in office, or other sufficient cause, has exclusive jurisdiction of the case: Commonwealth *v.* Leech, 8 Wright 332; Lamb *et al. v.* Lynd, Id. 336; Kerr *v.* Trego, 11 Id. 292, 299.

Here is the remedy by impeachment expressly provided, and that remedy must be followed in exclusion of others; but if the cause for which the offender is thus punished is a public offence,

[Commonwealth *v.* Allen.]

he may be also indicted, tried and punished, according to law:" Barker *v.* People, 3 Cowen 705.

The forfeiture imposed by the sixty-sixth section of statute March 31st 1860, is part of the *punishment* for violating its provisions, and does not take place on the commission of the crime, but is the consequence of the final judgment of the tribunal having jurisdiction of that part of the punishment; 2 Blackstone's Com. 267; Bishop's Crim. Law, § 609, 646; Bacon's Abridg. *Forf.* E.; Fire Dep't. *v.* Kips, 10 Wendell 266; Regina *v.* Douglas, 13 Ad. & Ellis N. S. 42; Huber *v.* Reily, 3 P. F. Smith 112; King *v.* Heaven, 2 Term Rep. 782.

Whenever the law prescribes the manner of contesting an election that course must be pursued, and a quo warranto will not lie at the instance of the Commonwealth to test the right to the office: Commonwealth *v.* Garrigues, 4 Casey 11; Commonwealth *v.* Baxter, 11 Id. 263; Commonwealth *v.* Leech, 8 Wright 332. Even in a case of the *actual conviction* of a member, for a crime declared by law a disqualification to hold office, the court could not interfere should the legislative body permit him to become or continue a member: Barker *v.* The People, 20 Johns. 457, and 3 Cowen 686.

The defendants were not disqualified from being elected and holding office, although their acts whilst in office may have been a disqualification: Rex *v.* Chitty, 5 Ad. & El. 607; Regina *v.* Mayor of Leeds, 7 Ad. & El. 963.

The opinion of the court was delivered, February 12th 1872, by

AGNEW, J.—We cannot doubt the jurisdiction of the court in this case. There is no true analogy between the state legislature and the councils of a city. Their essential relations are wholly different. The councils are in no proper sense a legislature. They do not make laws, but ordinances; nor are the members legislators, with the constitutional privileges and immunities of legislators. The councils owe their existence, their rule of action, their privileges and their immunities solely to the law, which stands behind and above them; and their ordinances have their binding force, not as laws, but as municipal regulations only by virtue of the law which infuses them with vigor. Hence all those decisions which evince the unwillingness of courts to interfere with the members of the legislature have no place in the argument. The legislature and the courts, deriving their existence from the Constitution itself, are co-ordinate, independent branches of the government, standing upon a footing of equality in the exercise of those powers which the Constitution imparts to each in its own sphere. It would ill become a court of justice to attempt to displace a member of Assembly. Its desertion of its appointed orbit would be followed by such a display of incompetency to effect its purpose as

[Commonwealth *v.* Allen.]

would be its most signal rebuke. This distinction between a legislative body, representing the people, the primary power in the state, was directly in the mind of the chancellor who decided Barker *v.* The People, 20 Johns. 457, a case strongly relied on by the defence. He said : " The disqualification pronounced by the court would then fail to produce exclusion from the legislature ; but it would, nevertheless, be effectual to exclude from all other public stations. Its effect in respect to all other public employment must be decided by the tribunals of justice." If the councils of a city, no matter how large, may defy the law under which they exist and exercise 'all their powers, so may the councils of the most humble borough, and thus the law of the land be violated with impunity, unless the courts of justice have power to curb their deviations and correct their misdeeds. The right of this court to issue the writ of quo warranto to determine questions of usurpation and forfeiture of office in a public corporation cannot be questioned. Its powers, fully established by the General Assembly, 22d May 1722, 1 Smith's Laws 131, and repeated in the Act of 16th June 1836, Purd. 928, pl. 19, have been recognised in numerous decisions, to some of which I may refer : Commonwealth *v.* Arrison, 15 S. & R. 130 ; Commonwealth *v.* McCloskey, 2 Rawle 379–81 ; Commonwealth *v.* Jones, 2 Jones 365 ; Cleaver *v.* Com., 10 Casey 283 ; Lamb *v.* Lynd, 8 Wright 366 ; Updegraff *v.* Crans, 11 Wright 103 ; Kerr *v.* Trego, Id. 292. The second section of the Act of 14th June 1846, Purd. 832, pl. 2, confers upon the Courts of Common Pleas the power to issue writs of quo warranto concurrently with the Supreme Court in the cases enumerated, within which the present clearly falls. The cases cited by the defence against the exercise of the power by quo warranto, to remove one who has forfeited an office, have little weight. The Commonwealth *ex rel.* Duffield *v.* Laughlin, was an application for a mandamus to restore Duffield to a seat in council, after the common council had removed him for cause. The council had judged and determined the case, and this court refused to rejudge it, because it fell within the power of the council to determine the disqualification. This is no authority against the power of the court to remove one who has forfeited his seat by a violation of law, which the council has neglected or refused to redress. The Commonwealth *v.* Barger was the case of a motion for a quo warranto founded on the provision of the city charter that " no member of the state legislature shall be eligible as a member of councils." Says the opinion : " This law is express that one who is a member of the legislature cannot be elected to council ; but does not say that a councilman, on becoming a member of the legislature, loses his seat in council." The latter question the court declined to decide and refused the motion. It is evident that the mind from which the opinion emanated

[Commonwealth v. Allen.]

was laboring under the impressions produced in writing the opinion in Duffield's Case, which is referred to, but which has no possible reference to such a case as that now before us.

The question as to the quo warranto evidently received but little consideration. As to the English cases of King v. Heaven, 2 Term Rep. 772, and King v. Ponsonby, 1 Vesey, Jr. 1, all that need be said is that they are inconsistent in the application now made of them, with the practice in this state, as shown by the authorities already cited. The quo warranto is a great prerogative writ, and may be refused if demanded for light and trivial causes. Hence, in England, in questions of mere privilege, where its loss proceeds from innocent acts, as removal out of the corporation limits, the court may and does let the corporation first declare the amotion. But when a forfeiture of office occurs by an illegal act, the violation of law stands on a different footing. In such cases in this state the power of the court will not be invoked in vain by the law officer of the government, the attorney-general, whose duty it is to vindicate the broken law.

It now remains to inquire into the case before us, and to see whether there is anything in the city charter which excludes the exercise of the power of the courts. Nicholas Shane became a city councilman in January 1870, for the term of two years. William S. Allen and Henry Huhn became councilmen in January 1871, for two years. On the 16th of December 1869, these gentlemen became sureties in the official bond of Joseph F. Marcer, city treasurer. By the Act of 31st March 1860, section 66, Purd. 229, pl. 74, it is made unlawful for any councilman of any corporation or municipality to be the surety of any treasurer of the corporation, and any person violating this provision "shall forfeit his membership in such corporation, municipality or institution and his office or appointment thereunder, and shall be guilty of misdemeanor, and on conviction thereof be sentenced to pay a fine not exceeding five hundred dollars." The defendants fall literally within the terms of the law:—It shall not be lawful for a councilman to be the surety of the treasurer. He cannot, at one and the same time, be both. While the bond lasts the relation of principal and surety continues, and in becoming a councilman the unlawful relation begins. He is then surety and councilman at the same time, and as a consequence the law forfeits the office. It is the purpose of the law to cut off all opportunities for the councilman to aid his principal in the bond, either by doing or forbearing to do that which duty would require, yet which self-interest might forbid. The demurrer admits the fact charged in the suggestion, and, as a consequence, the forfeiture; but denies the power of the writ of quo warranto to remove the offender from the office he has forfeited. Forfeiture arises in the unlawful relation, not upon the conviction for the misdemeanor. The consequence of con-

[Commonwealth *v.* Allen.]

viction is the fine, but this does not enforce the forfeiture. If conviction of the misdemeanor be necessary to declare the forfeiture, it follows that neither court nor council can purge the body of the unlawful relationship. The position would pluck up by the roots the power claimed for the council to judge of the qualification of its members. Still less forcible is the argument that conviction must precede the quo warranto. It issues to inquire not into the misdemeanor, but into the rights of the member to continue in office. The proceeding itself provides for the trial of disputed facts. By the ninth section of the act, Purd. 833, pl. 9, the defendant may traverse all or any of the material facts contained in the suggestion as in other cases, and the person at whose instance the writ issues shall reply, take issue or demur, and thereupon issue shall be joined in the cause as in other causes. Quo warranto is a proceeding at law, and the fact which determines the defendant's right to his office, or the loss of it, is triable by a jury, as in other legal proceedings, so that conviction is entirely unnecessary, and not essential to give jurisdiction to the court. The error in applying to such a case the doctrine of Huber *v.* Reily, 3 P. F. Smith 112, is in failing to remember that quo warranto is a legal proceeding before a competent court of law to determine the forfeiture, where the party has his day in court, and a due jury trial according to the course of the common law.

What obstacle, then, does the city charter oppose to the authority of the court? It is said that councils have power in like manner as each branch of the legislature to judge and determine the qualification of their members. Granting that, it does not follow that the authority of the court is taken away to inquire into a forfeiture, which does not take place until the member has been admitted to his seat. It is only then it becomes necessary to enforce the law by giving judgment of ouster. If councils had not admitted the member to his seat there would have been no violation of law, and consequently no forfeiture. Conceding that the power to inquire into the qualification of a member implies a power to declare his disqualification, the omission of the council to make the inquiry is not a bar to the legal proceedings to enforce a salutary law. The offence, beginning only when the member unites in himself the double relation of councilman and surety, is continuing in its nature so long as he continues to be surety and councilman at the same time. If then the council suffer the oath to be administered *sub silentio*, or fail afterwards to inquire into and declare the disqualification, how can it be argued that the forfeiture which took effect *eo instanti* when the member was sworn in, and continues while the prohibited relation continues, cannot be judicially ascertained and declared? This would set the council above the court, for it is the court which commands the inquiry. The error is in confounding disqualification

[Commonwealth *v.* Allen.]

with forfeiture, so far as to suppose they are equivalent expressions. The fact that a man is surety for a corporation officer is a cause of disqualification to take the seat, but when the seat is taken it becomes a cause of forfeiture. As a disqualification the councils may refuse the seat, and even after he has taken it they may remove him by reason of continuing disqualification. But when actual forfeiture takes place by the union of the relations of surety and councilman, if the council fail to inquire into what they may consider the continuing disqualification, what clause of the charter or what principle of law robs the court of its necessary jurisdiction to inquire into the violation of the law, and oust the sitting member from a seat which he no longer rightfully holds? The whole argument against the power of the court is in effect to declare the councils superior to the law. But the law which declares the forfeiture is the true superior, and no omission or device of councils can retain a member in his seat who has forfeited it by his illegal act. The demand of the law cannot be set aside by the non-action or wrong action of a body wholly subordinate to it.

The argument founded on the 45th section of the Consolidation Act is even less conclusive. The power of the common council to impeach and of the select council to try the impeachment for misdemeanor in office, and thereupon to remove "officers elected by the qualified voters," is not incompatible with the exercise of the judicial power to oust an usurping officer, or one holding over unlawfully. It is not a specific proceeding for the case before us, and does not fall within the Act of 21st March 1806, Purd. 41, requiring when a remedy is provided or duty enjoined by any act, the directions of the act shall be strictly pursued. Whatever may be the effect of the 45th section in a case of forfeiture, in its application to officers elected under the charter by the qualified voters, to whom it more strictly applies, and as to which we give no opinion, the argument is contradictory which assumes for council the exclusive power to try the disqualification of its own members, and yet insists on impeachment as the only remedy under the 45th section. It would be a new phase of the case to find the common council calling on the select to try its members. Upon the whole case we are of opinion that the court below erred in giving judgment for the defendants on the demurrer.

> The judgment is therefore reversed, and the court do now adjudge and determine that the said William S. Allen and Henry Huhn have forfeited their offices as members of the common council of the city of Philadelphia, by reason of the matters suggested to us by the attorney-general of this Commonwealth, and by them admitted in their demurrer; and do now consider and adjudge that they and each of them be

[Commonwealth *v.* Allen.]

ousted, and altogether excluded from their offices as
councilmen as aforesaid, and that they and each of
them pay the costs of this proceeding; and we do
order and adjudge that Nicholas Shane, whose term
of office hath expired, shall also pay the costs; and it
is ordered that a certified copy of this judgment be
served by the high sheriff of this county upon each
of said defendants, William S. Allen and Henry
Huhn, forthwith, and a certified copy of the decree
also delivered by him to the clerk of the said common
council, of all which the said sheriff is required to
make immediate return.