## In re Carbon County Commissioners

ARNOLD, Deputy Attorney General, July 12, 1934.—Certain taxpayers of Carbon County have petitioned the Attorney General to institute quo warranto proceedings to oust Morris G. Prutzman and George H. Enzian, two of the county commissioners of that county from office. The respondents filed an answer to the petition, and by agreement of counsel the case has been considered on petition and answer.

The respondents were county commissioners of Carbon County during a prior term which included the fiscal year 1929, and were reëlected in 1931 for a new term of 4 years beginning in January 1932.

An appeal was taken from the county auditors' report for the year 1930,

alleging irregularities in the accounts of the commissioners for the year 1929. On September 22, 1933, the courts of common pleas sustained the appeal and surcharged the commissioners (two of whom are the respondents here) in the sum of $129,497.61.

The charges against the commissioners which were thus sustained involved a large number of items. Moneys were expended for purposes of a public nature but not within the jurisdiction of the commissioners; other expenditures were made without compliance with prerequisites prescribed by law; minutes and records were not kept; and clerks in the commissioners' office altered checks, vouchers, and minutes, apparently committing actual fraud on the county. The record, as recited in the opinion of the court, discloses a course of carelessness and incompetence on the part of the commissioners, but does not show embezzlement or actual fraud on their part. The court expressly declared that there was no testimony showing that the commissioners profited directly or indirectly by any of the transactions which necessitated the surcharges.

No prosecution has been instituted against the commissioners for any of the acts involved in the appeal proceeding.

With the record in this condition, could a quo warranto proceeding to oust the two commissioners who were reëlected be successful? We are forced to conclude that it could not.

Writs of quo warranto in Pennsylvania are authorized only by the Act of June 14, 1836, P. L. 621, sec. 2, which provides as follows:

"Writs of quo warranto in the form and manner hereinafter provided, may also be issued by the several courts of Common Pleas, concurrently with the Supreme Court, in the following cases, to wit: . . .

"II. In case any person, duly elected or appointed to any such office, shall have done, suffered, or omitted to do, any act, matter or thing, whereby a forfeiture of his office shall by law be created."

The statutory provision just quoted leads us to an inquiry as to what act, if any, is shown by the present record whereby a forfeiture of office has by law been worked.

The grounds of forfeiture of the right to hold office fall into two broad classes. The first includes the large group of cases in which the simple happening of an event or the commission of an act, whether it involve misconduct or not, disqualifies a person from holding office. Thus, where residence is a qualification, loss of that residence works a forfeiture: Act of May 15, 1874, P. L. 186, sec. 12. Similarly, where the law provides for forfeiture if an officer shall "commit" or "be guilty" of certain acts, which may also be crimes, the commission of the act works the forfeiture, and conviction of the crime is not a prerequisite to removal by quo warranto. Examples of this type of case are found in Commonweath v. Allen et al., 70 Pa. 465 (1872), Commonwealth ex rel. v. Walter, 83 Pa. 105 (1876), and the Commonwealth ex rel. v. DeCamp, 177 Pa. 112 (1896). See also Commonwealth ex rel. v. Bennett, 233 Pa. 286 (1912).

The second general class consists of situations in which conviction of a crime is a necessary prerequisite to forfeiture of office or disqualification from holding office. Article VI, sec. 4, of the State Constitution exemplifies such a provision. It provides as follows:

"All officers shall hold their offices on the condition that they behave themselves while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. . . ."

In such cases, nothing short of a sentence in a criminal proceeding creates a forfeiture: Shields v. Westmoreland County, 253 Pa. 271, 273 (1916); Wilner's Petition, 12 D. & C. 680 (1929); Commonwealth ex rel. v. Woods, Attorney General, 33 Dauph. 45 (1930).

The petitioners have not directed our attention to, and our independent investigation has failed to disclose, any act of assembly or any constitutional provision which would bring the case within the first general class above mentioned and which would operate to create a forfeiture of the office of county commissioner simply by reason of the commission of the acts here complained of.

It is likely that the acts of these respondents were such as to make them liable to prosecution at common law for misbehavior in office: Commonwealth v. Rosser et al., 102 Pa. Superior Ct. 78 (1930). Under article VI, sec. 4, of the Constitution, supra, conviction of such a charge would have worked a forfeiture of office: Commonwealth v. Rosser et al., supra, pp. 88, 89. But there has been no such prosecution and no conviction of any crime.

Under these circumstances, we are convinced that a quo warranto proceeding could not be successfully maintained on the present record.

This conclusion makes it unnecessary to consider respondents' contention that they could not now be removed for acts committed in a prior term of office.

For the reasons stated, the petition is refused.

From C. P. Addams, Harrisburg, Pa.