STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, ET AL., RELATORS, V. ED FARLEY, RESPONDENT.

FILED JULY 29, 1932. No. 28095.

C. A. Sorensen, Attorney General, Clifford L. Rein and Robert G. Fuhrman, for relators.

McCarthy & McCarthy, Cecil R. Boughn and James H. Hanley, for respondent.

Heard before GOSS, C. J., ROSE, DEAN, EBERLY and DAY, JJ., and DICKSON and TEWELL, District Judges.

DICKSON, District Judge.

This is a *quo warranto* proceeding brought in this court to oust and exclude the respondent from the office of the clerk of the district court of Thurston county, Nebraska. The relators are the attorney general of Nebraska and the county attorney of Thurston county. The information charges in substance that at the November, 1930, election the respondent was a candidate without opposition in Thurston county for the office of clerk of the district court, receiving 2,533 votes for said office; that the votes were officially canvassed, and the respondent was officially declared elected to said office; and that the respondent entered upon the duties of said office, and has since assumed the powers and duties thereof, and claims the right, authority and power to exercise and discharge them.

The information further charges that continuously since January 8, 1919, by virtue of various elections, the respondent has held said office, and has exercised the duties and powers thereof; that during said period of time, and up to and until March 31, 1927, the compensation of that office was the sum of $2,000 a year, payable out of the fees of the office; and that during said period it was the duty of the respondent to pay all fees of said office earned or collected in excess of said sum into the county treasury; that after March 31, 1927, the compensation was $2,000 a year, payable by warrant on the general fund of the county; and that it was the respondent's duty, since that date, to pay all fees collected and earned by his office into the county treasury; that the office of the clerk of the district court is an office of public trust, and that the respondent, as the clerk thereof in so far as his duties relate to the collection of fees which are the property of the county, is a collector and custodian of public funds; that on November 4, 1930, at the time of the election of the respondent to his present term of office, and when he entered upon and assumed to exercise the duties of said office under the election of November 4, 1930, he was in default as a collector and custodian of public money, which, under the provisions of sec-

tion 2, art. XV of the Constitution of Nebraska, rendered him ineligible to act as clerk of the district court of said county; and that the election of the respondent on November 4, 1930, was null and void by reason of the fact that the respondent was in default as a collector and custodian of public funds, and not elgible to hold office under the laws of the state of Nebraska; that for the years 1919 to 1930, both inclusive, the fees earned in said office by respondent amounted to $30,166.32; that respondent during said time paid into the county treasury $9,582.72; that his salary for that period was $16,500, leaving a balance due the county from the respondent of $4,083.60; that of this amount the respondent negligently and carelessly failed and refused to collect $2,387.88, that sum being due for services rendered by him as clerk of the district court; that the remaining $1,695.72 was collected and received by respondent and converted to his own use, and the respondent wholly failed, neglected and refused to pay the same to the county treasurer of Thurston county, Nebraska, upon demand made by the proper county authorities and is in default with respect thereto; and that the same remains unpaid, and that the respondent unlawfully withholds the same from the county, the lawful owner.

The relators demand judgment against respondent, that he be adjudged guilty of usurpation of, and intrusion into, and unlawfully holding the office of clerk of the district court of said county; and that the respondent be excluded from the same, and from the privileges and franchises therein, and for such other relief as may be proper.

To the information filed against the respondent he answered, and among the allegations of his answer admits that, since January 1, 1919, and up to the time of answering the information, he has been clerk of the district court of said county, and exercised and discharged the duties of that office; and that his salary was as set forth by the relators. Respondent denies that on November 4, 1930, when elected as clerk of the district court of said county, or when he took office under said election, he was in default as

a collector of public moneys; pleaded that more than ten years have elapsed since the transaction complained of by the relators during the years 1919, 1920 and the first half of 1921; denies that he negligently and carelessly failed or refused to collect any items of fees for services rendered by him; and charges that it is a custom and usage in Nebraska for clerks of the district court, and of the supreme court, to extend credit and charge fees, and admits that he did so in certain cases where he considered it safe so to do.

Answering further, the respondent says that he made frequent reports to, and settled with, the county board of Thurston county, and that each and all of said reports and settlements were full and complete; that if any inaccuracies or errors occurred therein it was the result of oversight, mistake or inadvertence, and not through any wilful or corrupt intention on his part; and that it was not his intention to withhold or appropriate any funds or moneys belonging to Thurston county.

The reply of the relators to the answer of the respondent is a general denial.

William T. Thompson was by the court appointed referee to take the testimony and report his findings of fact and conclusions of law; which were accordingly done by Mr. Thompson, and appear herein in full.

To the report of the referee the respondent took exceptions, and filed objections thereto. In substance the objections are: That the findings of fact by the referee are not sustained by competent or sufficient evidence, and are contrary thereto; and that the report is conflicting and contradictory, and contrary to law.

From the record it appears that previous to the hearing before the referee the county had employed Gillin-Holland Company to make an audit of the county offices, and that this audit included the office of the clerk of the district court from January, 1920, to December 31, 1929, inclusive; that after the audit of Gillin-Holland Company was made, the respondent employed H. A. Blomquist & Company to check and reaudit the audit of Gillin-Holland Company.

The evidence in this case seems to center around these different audits. One of these audits seems to have been made with the object and end in view of reflecting the official doings of the respondent from the records as kept by him in his office. Not so much can be said of the other. The auditing company was privately employed by the respondent to confuse rather than enlighten, to hinder rather than assist, to obscure rather than reflect the facts; and to aid the respondent to escape the consequences of years of misadministration in office, commencing as early as 1920.

Matters are included in the Blomquist audit that were foreign to the issues, and have been properly excluded by the referee in determining the amount of respondent's shortage in fees earned and collected and not paid to the county treasury, as by law required. When these two audits are considered, after excluding such matters as were not in issue, there is no substantial difference; and they sustain the findings of the referee. There seems to be no question as to the correctness of the preliminary findings of the referee, and it might be omitted; but that a better understanding may be had of the facts, it is thought best to give them in full, and they are as follows:

"In the findings following, no account, except incidentally, is taken of trust funds coming into the hands of defendant, in contra-distinction to the legal fees of the office, resulting from official services rendered by him; nor has notice been taken of the failure of defendant to pay into the school fund of the county unclaimed fees and costs incident to the office, in compliance with section 33-154, Compiled Statutes of Nebraska 1929, which has been declared unconstitutional. *State v. Moores,* 52 Neb. 770. Neither has account been taken of uncollected fees, except as circumstances tending to throw light upon the question of defalcation. In other words, in determining or finding, as a mixed question of fact and law, whether defendant is or is not a defaulter, as collector and custodian of public moneys under section 2, article XV of the Constitution, only collected fees have been charged herein to defendant, as dis-

tinguished from uncollected fees. The question whether, in this class of cases, uncollected fees of the office should be charged to defendant, your referee has deemed it unnecessary to determine.

"1st. It is either admitted or proved, and your referee finds, that the defendant was elected clerk of the district court of Thurston county, at the general election in November, 1918; that he qualified therefor and entered upon the duties of the office on the first Thursday after the first Tuesday of January, 1919; that he was subsequently elected to the same office from term to term down to and including the year 1930, or, at least, received votes sufficient to entitle him to be declared elected by the election officers, assuming him to have been then eligible to election. For each of the several terms, he entered upon the performance of the duties of the office, and received the compensation or salary by law provided. From the time he first took office in January, 1919, to March 31, 1927, he received from the fees of the office $2,000 a year, or $16,500 in the aggregate. Subsequent to said date a yearly salary of $2,000 was due him, payable by warrant drawn upon the general funds of the county.

"During the years 1919 and 1920, defendant kept a fee book showing, or purporting to show, the fees of his office. Thereafter no fee book appears to have been kept.

"By reason of the provisions of section 2369, Compiled Statutes of Nebraska 1922, defendant made to, and filed with, the county board quarterly reports of the fees of his office for the first two quarters of the year 1919, but none was made or filed for the last two quarters of that year. Quarterly reports were made to and filed with the board for the years 1920, 1921 and 1922, but for the years 1923, 1924, 1925, 1926 and 1929 no quarterly report was filed. For the year 1927 reports were filed for the first three quarters; but none was filed for the fourth quarter. For the year 1928 quarterly reports were made to and filed with the board for the first three quarters, but none was made or filed for the last quarter of the year. None of the re-

ports were made out as the statute, section 33-108, Compiled Statutes of Nebraska 1929, requires, and none of them is sworn to or made under oath as the statute demands. Only eighteen of the forty quarterly reports required by law were made to the county board by defendant, of the fees of his office for the ten years from 1920 to 1929, inclusive.

"2d. It is shown by the evidence and found from the facts that defendant made and filed quarterly reports of the fees of his office to, and with, the county board during the first four years of his incumbency and other facts and circumstances proved that he knew that it was his lawful duty to make quarterly reports and that he purposely and intentionally failed to continue to do so.

"3d. The evidence shows and your referee finds that, during the year 1920, defendant collected of the fees of his office and so reported to the county board the sum of $2,273.80. From this sum he deducted his yearly salary of $2,000, which left a balance of public moneys due and payable to the county January 1, 1921, of $273.80, which sum at this time remains unpaid. In regard to this item, diligence has been used to ascertain, from the evidence, if this may or may not have been subsequently paid into the treasury by overpayments, and it is found that only two overpayments during the ten-year period involved were made, one in 1927, of $66.83, and one in 1928, of $5.55, and that during the same period underpayments of fees amount in the aggregate to $3,404.60. In arriving at this sum the item of $157.50 in fees earned during the year 1919 and not accounted for is not included.

"In this connection, notice has been taken of, and due consideration given to, the testimony of Frank M. Bowen, one of the examiners employed by defendant to audit the records of his office, the obvious purpose of his testimony being to show that $273.80 of the fees reported to the county board by defendant as collected, or as coming into the office, for the year 1920, were not collected. It is conceivable how the records of the office might fail to show

that the fees for that year had been paid, but it is difficult to understand how such failure would warrant the conclusion testified to by their witness that they were in fact not paid. Such testimony cannot properly be considered sufficient to impeach the truthfulness of plaintiff's exhibit No. 7, defendant's own signed report to the county board, especially since defendant, although testifying in his own behalf, failed to testify that his report to the board for that year was incorrect, an oversight or an inadvertence.

"4th. The evidence shows, and your referee finds, that during the defendant's several terms of office he extended unlimited credit to persons obtaining his official services, and that at no time did he require security for the payment of such services, and at no time after credit had been given for costs made or fees earned did he issue and cause to be served on any one owing fees to the office a fee bill for the collection of costs so earned, which acts were done and neglected to be done in flagrant disregard for his known duty, as clerk of the court.

"5th. It is further found that during defendant's ten-year incumbency in office, and both prior and subsequent to March 31, 1927, when defendant's salary was changed from payment out of the fees to payment by warrant on general fund of county, he deposited the fees of the office and commingled the same with his private funds and account, and drew checks against the commingled funds for both official and private business.

"6th. There is competent evidence to show and your referee finds that, for and during the year 1923, the fees of the office actually earned amounted to the sum of $2,791.30, and after deducting salary of $2,000 there remained unaccounted for by defendant the sum of $791.30.

"7th. There is competent evidence to show and your referee finds that during the year 1924 the fees of the office earned amounted to $2,585.40, and for which no quarterly reports were filed with, or made to, the county board, which, after deducting $2,000 for salary, left a balance remaining of $585.40, of which defendant paid over to the

treasury the sum of $250, leaving a balance of $335.40 of earned fees.

"8th. The evidence shows, and your referee finds, that during the year 1925 the fees of the clerk's office earned amounted to the sum of $3,202.75, and defendant received in salary therefrom the sum of $2,000 and paid into the treasury for the same year the sum of $1,004.24, leaving a balance of $198.51 of such fees earned but not paid to the county treasury.

"9th. The evidence shows, and your referee finds, that for the year 1926 the fees of the office earned amounted to $2,677.80, and that for the year defendant paid into the county treasury $400, and received $2,000 as salary, leaving of the fees for the year, and not paid into the county treasury, $277.80.

"10th. The evidence shows, and your referee finds, that during the year 1927 the fees of the office earned were $2,192.92, of which amount defendant received as and for the first quarter's salary $500 (the office going onto a flat salary basis, payable by warrant on the general fund April 1, 1927) and paid over to the county treasury the sum of $1,759.75, or $66.83 in excess of the fees earned during the year.

"11th. The evidence shows, and your referee finds, that during the year 1928 the fees of the office earned amounted to $2,111.88, and for the same year defendant paid over to the county treasury the sum of $2,117.43, or $5.55 in excess of the fees earned and collected.

"12th. The evidence shows, and your referee finds, that during the year 1929 the fees of the office earned amounted to $1,639.80 for which year defendant paid into the county treasury $1,371.53, or a deficit of $268.27.

"13th. The evidence shows, and your referee finds, that for the year 1923 defendant made no report to the county board of the fees of his office, and apparently kept no account thereof, while the fees of the office amounted to $2,791.30 during the year. Allowing him credit of $2,000 from the fees for the year, there remained $791.30 un-

accounted for, no part of which has been covered into the county treasury.

"14th. The evidence shows and your referee finds that, in addition to the sum of $273.80 collected by defendant for the year 1920 and not accounted for, there is a further sum of $1,200, or more, which defendant has collected of fees of the office and has not accounted for and paid into the county treasury during the ten years involved.

"15th. The evidence shows, and the referee finds, that for the ten years beginning with the year 1920 and ending with the year 1929 the fees of the office earned amounted to $28,147.45; that during the same period defendant was entitled to the following credit: $8,142.85 paid into the county treasury and $16,500 as his salary, aggregating $24,642.85, leaving a difference of $3,504.60 between the fees of the office earned and the credits to which defendant is entitled to receive and has been given.

"16th. The evidence of defendant's conduct in his not keeping a true and accurate account of the fees of his office, in not making to, and filing with, the county board the required quarterly reports of such fees; in not collecting, or taking security therefor; in not reporting and paying into the treasury of the county annually the fees of his office collected, in excess of the amount of his salary; in commingling the fees of his office with his private funds, and in drawing checks against such commingled funds in payment of his private accounts as well as official demands, warrants the inference, and it is therefore found, that such conduct was wrongful, wilful and done, or omitted to be done, with the intent to misappropriate the public moneys of Thurston county.

"Conclusions of Law.

"1st. The office of clerk of the district court is an office of trust and profit, under the laws of the state of Nebraska.

"2d. The clerk of the district court, as to moneys received by him for official services rendered, or to be rendered, is a collector and custodian of public money, within

the intent and meaning of section 2, of article XV of the Constitution.

"3d. The word 'eligible,' as used in the Constitution, means the capacity or qualification to be elected to an office of trust or profit, as well as to hold such office.

"4th. Prior to April 1, 1927, the law required the clerk of the district court of Thurston county to collect in advance of service rendered, or take security therefor, all fees earned, or to be earned, by him for all official services demanded; to report the same quarterly, under oath, to the county board, and to pay all such fees, in excess of $2,000, into the county treasury, at the end of each year.

"5th. Subsequent to the 31st day of March, 1927, the law requires the clerk of the district court to collect the fees of his office, for services rendered, or to be rendered, in advance, or to take security therefor, to report the same quarterly, under oath, to the county board, and to pay all of the fees into the county treasury at the end of the year.

"6th. The compensation provided for the clerk of the district court prior to April 1, 1927, should be figured on a yearly basis, and not upon a term basis, and a clerk of the district court is not entitled to retain an excess of fees earned by him in any one year, above the maximum amount allowed per annum, to make up for a deficiency in amount of fees earned by him during preceding years of his term of office. *Buffalo County v. Bowker*, 111 Neb. 762.

"7th. The manifest purpose of section 2, article XV of the Constitution, was and is, to demand of and secure from all persons holding office of trust or profit in this state as collectors and custodians of public money or property honesty and faithful service, by proving that such as are recreant of their trust, by becoming defaulters, shall not be eligible to any office of trust or profit under the Constitution or laws of the state.

"8th. Neither the statute of limitations, enacted by the legislature, nor a custom running counter to the fundamental law, pleaded by defendant, can be successfully urged as a defense to the 'default' of a collector and custodian of

public money, denounced by section 2, article XV of the Constitution.

"9th. The provision of the Constitution involved is penal in its nature, and to render defendant in 'default' and ineligible, there must have been such wilful misconduct, omission of duty, or wrongful action, that the intent to misappropriate the money belonging to the county is fairly inferable therefrom.

"10th. The defendant as clerk of the district court who has knowingly and intentionally deposited the fees of his office in bank together with his private funds in one account, checked against them for both his private use and for official matters; who has knowingly, intentionally and wilfully failed to report to the county board quarterly the fees of his office, under oath, for more than half of the time of his incumbency; who knowingly, wilfully and intentionally has failed to pay into the county treasury at the end of the year the fees of his office collected, during the year, in excess of his salary; who has wilfully and intentionally failed to pay such fees when requested so to do by the proper officers, is in default, as collector and custodian of public money, within the meaning of section 2, article XV of the Constitution, and was at the general election in November, 1930, ineligible to be elected to office and is disqualified to hold the office of clerk of the district court or any other office of trust or profit under the Constitution or laws of the state.

"11th. It is concluded that at the time of defendant's election in November, 1930, he was in default as collector and custodian of public money and ineligible to be elected to the office of clerk of the district court for Thurston county, Nebraska, and is now disqualified from holding said office, and that his expressed willingness now to pay to the county any shortage in his accounts that may exist does not acquit or exculpate him of the act condemned by the Constitution. *State v. Moores*, 56 Neb. 1.

"12th. It is finally concluded that the relief prayed for by plaintiff should be granted."

The record in this case consists of three volumes; the oral testimony contains nearly 300 pages, and the exhibits exceed the oral testimony. The Gillin audit reproduced in detail the official transactions of the respondent during his term, excluding the year 1919, and is traversed by the Blomquist audit. To read and check the record in this case has been no small undertaking. Realizing the importance of the case, not only to the citizens of Thurston county, but to respondent as well; realizing that a wilful omission to account and pay over, with a corrupt intention, or such a flagrant disregard of duty as to fairly justify the inference that the respondent's conduct was wilful and corrupt, must be established by clear and satisfactory evidence; and further realizing that the right to hold an office is just as sacred in the eyes of the law as the right to hold property; and that the people have the right to elect their county officers, and to have such officers serve out the terms for which they were elected; and that it is not in contemplation of the Constitution that the officers should be removed but for grave reasons; the writer has checked and rechecked, read and reread, and reexamined the evidence on some questions many times, and has reached the conclusion that the referee's findings of fact are fully sustained by clear and satisfactory evidence, and that the referee's conclusions of law are sustained by the former holdings of this court in *State v. Moores,* 52 Neb. 770, and *State v. Moores,* 56 Neb. 1. The findings and recommendations of the referee are approved, and judgment will be entered accordingly.

JUDGMENT OF OUSTER.