STATE, EX REL. PAUL F. GOOD, ATTORNEY GENERAL, ET AL., RELATORS, v. ORA O. MARSH, RESPONDENT.

FILED JUNE 27, 1933. No. 28732.

*Paul F. Good, Attorney General, William H. Wright* and *J. H. Falloon,* for relators.

*Frank N. Prout, D. D. Reavis* and *John C. Mullen,* contra.

Heard before GOSS, C. J., GOOD, EBERLY, DAY and PAINE, JJ., and CHASE and LOVEL S. HASTINGS, District Judges.

PAINE, J.

This is an original application in the nature of *quo warranto* to oust respondent from the office of county treasurer of Richardson county, Nebraska, on the ground that he is ineligible to hold such office, within the meaning of section 2, art. XV of the Constitution of Nebraska, which provides: "Any person who is in default as collector and custodian of public money or property shall not be eligible to any office of trust or profit under the Constitution or laws of this state."

An information in *quo warranto* was filed in this court by the state of Nebraska, upon the relation of Paul F. Good, attorney general, and J. H. Falloon, county attorney of Richardson county, Nebraska, relators, as plaintiffs, against Ora O. Marsh, respondent, as defendant. Leave to docket same was granted by all of the members of this court signing the praecipe. A summons was thereupon issued, and served by the sheriff of Richardson county; an answer was filed, asking that the information in *quo warranto* be dismissed, whereupon a stipulation was entered into by each of the parties, and filed in this court March 21, 1933, by which each party consented to the immediate appointment of a referee, and, subject to the approval of this court, suggested that Donald C. Gallagher be ap-

pointed as such referee, which was duly ordered by this court. An amended answer was filed, and a reply thereto, and upon May 16, 1933, the referee filed his report in this court, and the same came on for hearing upon the objections to the report of the referee, setting out that the information in *quo warranto* does not charge that the defendant knowingly, wilfully, intentionally, or corruptly took any money at any time from Richardson county, and that the report is not sustained by competent evidence or sufficient evidence, and that the report is contrary to the law and the evidence, and is conflicting and contradictory in its terms. Each party having filed briefs herein, an oral argument was made to the court, and the same is now submitted for an opinion.

The referee, in his findings of fact, sets out that Ora O. Marsh was elected county treasurer of Richardson county in November of 1926, and reelected in November, 1930, which last term began upon January 8, 1931, on which date he was short $860, which amount he had converted to his own use from the funds of Richardson county, and was then in default in said amount; that an audit was made, under direction of the county board, and upon January 26, 1931, he was found to be short $620, and by another audit of his books it was found that upon December 31, 1931, he was short $480, which amount had been converted to his own personal use, without any authority therefor.

The referee further finds that the said defendant issued license No. 19-49 for his own automobile in the year 1930, and has never paid nor accounted therefor.

The referee further finds, from the evidence given before him by the defendant, that he was a persistent borrower from the county funds in his hands, and sought to justify and excuse the taking of these funds on the ground that he believed himself entitled to retain five cents for the issuance by his office of each automobile license, basing his contention upon a law amended by the legislature in

1925, being section 60-325, Comp. St. 1929. Upon June 19, 1931, this court filed an opinion in the case of *Wayne County v. Steele,* 121 Neb. 438, which provided that county treasurers were not personally entitled to said fee of five cents, yet after such decision defendant continued to take money from the cash fund of his office, and attempted to justify or excuse his practice in so doing because of his unfortunate financial condition and personal necessities.

To make clear the exact manner in which the defendant took out money for his own use, we find that volume 3 of the records in the case at bar is made up of exhibits Nos. 1 to 441, each of which consists of a yellow memorandum paper about 8½ inches wide by 7 inches in length. These exhibits are all written in lead-pencil except one, and according to the testimony of Vern H. Shier, the bookkeeper in the county treasurer's office for many years, are the only records in the office which give in detail the items which made up the daily cash balance according to the cash book. All of the books, receipts, and records of every kind required to be kept in a county treasurer's office were accurately kept, as shown by the various audits made of the office, and the only record of the shortage in the office was shown on these 441 exhibits, being the separate daily work sheets, showing what the cash consisted of each particular night, itemizing the total amounts in each coin from one cent to one dollar, and in currency, and also giving the checks and cash items, and on each one of the daily lists the first name appearing on the left-hand side is the name "Marsh," with the amount due from him, as, for instance, on exhibit 263, November 12, 1931, the items carried that day were $725 due from Marsh, $14 due from Bowers, and $12 due from Mobley, the last two being upon checks of friends which had been turned down, and which he carried for months as cash items. No attempt was made to conceal the shortage from the employees in the office.

It is further shown that Mr. Marsh, his deputy, and the bookkeeper, sometimes all three helped in making out this daily work sheet of the cash; at other times it was entirely made out by any one of the three persons in the office who closed up that particular night. The first line under cash items for each of these 441 exhibits gives the exact amount of the shortage for that day of Mr. Marsh; it being considered by the two employees that this item was in the nature of an I-O-U. Exhibit No. 1 is for January 2, 1931, and shows that he owed that night $765. The next day he owed $825, and on January 7, the night before he took office .for his last term, he owed $850. On January 8, the first day of his new term, he owed $860, and from January 12, 1931, to January 21, inclusive, he owed $870. It is contended that toward the last of some months the shortage would run rather high, while the first few days of the month it would sometimes show that he owed a smaller amount, due to the fact that he would put in his salary check. Running over these 441 daily work sheets, one is found to be as low as $40, under date of March 31, 1931, and the last one, being exhibit 441, for June 14, 1932, shows that he owed $160, and at the close of business upon each one of these 441 nights the defendant, Marsh, owed some definite amount to the county, which he had so taken and converted to his own use out of the public funds entrusted to him in his official capacity.

The defendant, upon the witness-stand, denied that he was a defaulter, and testified that he had never concealed the fact that he was taking money, yet he had never notified the members of the county board of this fact, nor did his books, or the records required to be kept in his office, show that he was continually taking out money, for the books balanced, and only when an auditor would count the cash would he discover the shortage.

The defendant filed an affidavit, exhibit F, duly sworn to upon April 6, 1931, in which affidavit he stated that the money, being the five-cent fee on each license, had all been

returned to the county; yet, when we examine exhibit No. 77, being the work sheet for the cash on hand Saturday night, April 4, 1931, it shows that he owed $255, taken out of the county funds, and the work sheet at the close of business on Monday, April 6, 1931, shows that the defendant, Marsh, owed $260 on that date, and owed the same amount for the next two days, and that from April 9 to April 14, inclusive, the amount stood at $265. These facts, in connection with his affidavit, clearly show that he did conceal the taking of these funds, and endeavored to deceive the county board in relation thereto.

An audit was made of the defendant's books as county treasurer, as of the date December 31, 1931, showing $480 shortage, and, upon examination before the referee, the defendant was asked whether the $480 was in the cash drawer that night, and he admitted it was not, and admitted it was not in any bank depository, and then he was asked definitely where this $480 was, and made answer: "That is my business."

The evidence taken by the referee is clear and convincing that the defendant kept taking money out of the cash drawer of his office, and returning part of the same from time to time, and that the amounts taken bore no relation to the fee of five cents on licenses issued by him, which he claimed to warrant him in retaining funds, and that, after this court decided that such claim was groundless, he continued to appropriate to his own use, from the trust funds in his possession, the same as before.

The referee finds that such conduct on the part of the defendant was wrongful, wilful, and· done with the intent to misappropriate the money of Richardson county, Nebraska. An examination of the bill of exceptions in this case discloses that the findings of fact made by the referee are clearly supported by the evidence and exhibits in the case.

■ Section 20-21,112, Comp. St. 1929, provides that an information in *quo warranto* may be filed against any per-

son unlawfully holding or exercising any public office within the state, and sections 20-21,115 to 20-21,123 provide for the pleadings, trial, and judgment of ouster.

The defendant insists that the information comes too late, for that, if brought at all, it must have been brought before defendant Marsh assumed the duties of the office of county treasurer on January 8, 1931. In this the defendant is in error, for *quo warranto,* or a proceeding in the nature thereof, lies only against one who is in the possession and user of the office, or who has been admitted thereto. *State v. Huller,* 23 N. M. 306, 1 A. L. R. 170.

"*Quo warranto* will lie only when the party proceeded against is either a *de facto* or *de jure* officer in possession of the office, and an office that is vacant is in possession of no one. * * * *Quo warranto* will not lie before the beginning of the term of office." 22 R. C. L. 663, sec. 5.

■ ■ Section 618, High's Extraordinary Legal Remedies (3d ed.), holds that the information in the nature of *quo warranto* is only employed to test the actual right to an office, and that it can afford no relief for official misconduct, but if the acts of misconduct charged are declared by statute to work a forfeiture of his office, an information will lie, and judgment of ouster may be given against the officer upon the ground of such misconduct or breach of official duty.

In *Ames v. Kansas,* 111 U. S. 449, 28 L. Ed. 482, it states: "The original common-law writ of *quo warranto* was a civil writ, at the suit of the crown, and not a criminal prosecution. *Rex v. Marsden,* 3 Burr. 1812, 1817. It was in the nature of a writ of right by the king against one who usurped or claimed franchises or liberties, to inquire by what right he claimed them, * * * and the first process was summons. * * * This writ, however, fell into disuse in England centuries ago, and its place was supplied by an information in the nature of a *quo warranto,* which, in its origin, was 'a criminal method of prosecution, as well to punish the usurper by a fine for the

usurpation of the franchise, as to oust him, or seize it for the crown.' 3 Bl. Com. 263. Long before our revolution, however, it lost its character as a criminal proceeding in everything except form, and was 'applied to the mere purposes of trying the civil right, seizing the franchise, or ousting the wrongful possessor; the fine being nominal only.' " See 22 R. C. L. 657, sec. 2; *State v. Sengstacken,* 61 Or. 455, Ann. Cas. 1914B, 230; *Attorney General v. Sullivan,* 163 Mass. 446, 28 L. R. A. 455; 22 R. C. L. 713, sec. 40.

■ ■ The office of county treasurer is an office of trust and profit under the laws of the state of Nebraska. He is a collector and a custodian of public money, within the intent and meaning of section 2, art. XV of the Constitution of Nebraska. The manifest purpose of such section is to secure honest and faithful service from such officials by providing that those who are faithless to their trust, by becoming defaulters, shall not be eligible to any office of trust or profit under the Constitution or laws of this state.

In the case of *State v. Donahue,* 91 Neb. 311, it was set out clearly in the dissenting opinion therein that the word "wilfully" has a different meaning from the definition of that word as used in criminal law to describe a felonious act, and does not mean that the conduct of the officer to justify his removal must be prompted by some evil intent or legal malice, and, further, that a statute establishing a method of removing a public officer for wilful failure to enforce the law should be liberally construed, with a view to suppressing the mischief which made the legislation necessary, and a construction which would weaken the effect of the statute should be avoided. *Hiatt v. Tomlinson,* 100 Neb. 51; *State v. Farley,* 123 Neb. 687; *State v. Moores,* 56 Neb. 1; *Kane v. People,* 4 Neb. 509.

■ The provision, found in section 2, art. XV of the Constitution, that an officer who is in default is not eligible to hold any office of trust or profit, requires proof

of such wilful misconduct that the intent to misappropriate the trust funds in his hands as county treasurer is fairly inferable therefrom.

It is unlawful for a county treasurer to remove any part of the county funds out of the vault of the county treasurer's office except for the payment of warrants legally drawn, or for the purpose of depositing the same in a regularly selected bank depository for county funds, and when a county treasurer personally borrows public moneys in his possession as custodian thereof, then such county treasurer is in default as a collector and custodian of public money within the meaning and intent of the provision of the Constitution.

In concluding his report, the referee finds: "The defendant, as county treasurer, who has knowingly and intentionally appropriated money to his own use from the cash funds in his possession as custodian thereof for the county; who has knowingly, intentionally and wilfully published a false report of the financial condition of his office; who has knowingly, wilfully and intentionally issued to himself an automobile license plate, without paying or accounting to the treasury for the fee therefor, is in default as a collector and custodian of public money, within the meaning of section 2, art. XV of the Constitution, and is ineligible to hold the office of county treasurer."

The findings and recommendations of the referee are approved, and judgment entered accordingly.

JUDGMENT OF OUSTER.