421 P.2d 877

**STATE of Arizona ex rel. Darrell F. SMITH, The Attorney General, Petitioner,**

v.

**Robert C. BOHANNAN, Jr., Respondent.**

**No. 8841.**

Supreme Court of Arizona.

In Banc.

Dec. 21, 1966.

Rehearing Denied Jan. 17, 1967.

Darrell F. Smith, Atty. Gen., Philip M. Haggerty, Sp. Counsel, for petitioner.

Lewis, Roca, Scoville, Beauchamp & Linton, John P. Frank, and Thomas A. Latta, Phoenix, for respondent.

PER CURIAM.

This is an original proceeding in quo warranto filed in this Court in the name of the State of Arizona out of the relation of Darrell F. Smith, Attorney General, against Robert C. Bohannan, Jr., a member of the State Board of Public Welfare. Jurisdiction was accepted on September 27, 1966, pursuant to Article 6, § 5, subsec. 1, Constitution of Arizona, A.R.S. and after the filing of briefs submitted for decision on November 22, 1966.

By statute, a state official is prohibited from having an interest directly or indirectly in any purchase made by a board of which he is a member.

"A. Members of the legislature or state, county, city, town or precinct officers shall not be interested directly or indirectly in any contract or in any sale or purchase made by them in their official capacity, or by any body or board of which they are a member." A.R.S. § 38–446.

The facts admitted in this Court establish that from January 1, 1961, to March 12, 1962, respondent was president and a director of the Associated Mortgage and Investment Company, an Arizona corporation, and also a member of the Arizona State Retirement Board; that during this time Arizona Mortgage and Investment Company sold mortgages in an amount in excess of three million dollars to the Arizona State Retirement Board as investments for the state retirement fund.

522

■ It is, we believe, accepted without dissent that public officers must have no personal interest in transactions with the government which they represent. The rule is most aptly stated in Stockton Plumbing and Supply Co. v. Wheeler, 68 Cal.App. 592, 229 P. 1020:

"The principle upon which public officers are denied the right to make contracts in their official capacity with themselves or to be or become interested in contracts thus made is evolved from the self-evident truth, as trite and impregnable as the law of gravitation, that no person can, at one and the same time, faithfully serve two masters representing diverse or inconsistent interests with respect to the service to be performed." 68 Cal.App. 592, 601, 229 P. 1020, 1024.

This Court said in Williams v. State, 83 Ariz. 34, 315 P.2d 981:

"In order that he [the public officer] act only for and on behalf of the state's interest, it is imperative that he have no personal interest that might clash or conflict with that of the state. * * * Public policy requires that personal interests not exist as a possible factor influencing a public official in the performance of his duties."

We also said in removing by quo warranto an attorney general of this state for official misconduct:

"The object of the removal of a public officer for official misconduct is not to punish the officer, but to improve the public service. The public interest demands that public affairs be administered by officers upon whom rests no stigma * * * of any offense involving a violation of their official duties." State ex rel. De Concini v. Sullivan, 66 Ariz. 348, 359, 188 P.2d 592, 599.

As a member of the State Retirement Board, it was respondent's obligation to invest the funds of the state retirement system, A.R.S. § 38–743, and, in doing so, to pass upon the desirability of investments in order to insure the solvency of the retirement system. As president and a director of Associated Mortgage, it was his duty to further the interest of the corporation and to actively work for its financial betterment.

Respondent, as president and director of Associated Mortgage and Investment Company and as a member of the Arizona State Retirement Board, was obviously representing diverse and inconsistent interests since the interest of one must necessarily be sacrificed to the interest of the other.

By § 38–447, A.R.S., an officer who violates § 38–446 is subject to certain penalties.

"An officer or person prohibited by the laws of this state from making or being interested in contracts, or from becoming a vendor or purchaser at sales, or from purchasing evidences of indebtedness, who violates any provision of such laws, shall be punished by a fine of not more than one thousand dollars or by imprisonment in the state prison for not more than five years, and is forever disqualified from holding any office in this state." A.R.S. § 38–447.

The Arizona Legislature did not consider the violation of § 38–446 as a trivial or minor infraction. Punishment by imprisonment in the state penitentiary makes the offense a felony.

■ Respondent urges that § 38–447 has no application because there must be some benefit to him resulting in a profit before a violation of the law exists. We do not pause long in contemplation of this point. It is conduct which *may* be detrimental to the interests of the state which the statute seeks to prohibit.

■ But were it otherwise, respondent's personal profit is clearly evident. The records of the State Retirement Board, of which we take judicial notice, 9 Wigmore on Evidence, 3rd Ed., 537, 538, § 2568a; cf.

Climate Control, Inc. v. Hill, 86 Ariz. 180, 342 P.2d 854, establish that the written agreements between Associated Mortgage and Investment Company and the Retirement Board provide for payments each year by the board to the mortgage company of one-half of one percent per annum of the outstanding principal balance on the mortgages as a service charge. Associated Mortgage, as a minimum, profits by the agreements to the extent of one-half of one percent on three million dollars, and respondent, as its president and director, profits indirectly as the company prospers and directly in proportion to his stockholdings.[1]

■ Nor does the fact, if it be a fact, that respondent did not participate by voting as a board member for the purchase of these mortgages detract from the unlawfulness of his conduct. A public body is entitled to have the active service of its officers. See City of Ensley v. J. E. Hollingsworth & Co., 170 Ala. 396, 54 So. 95. If, by nonparticipation, respondent could avoid the duties of his office, he would be using this violation of his duties to justify the breach of the others. It has been held that prohibitory statutes are applicable where the public officer had nothing at all to do with the transaction, Capron v. Hitchcock, 98 Cal. 427, 33 P. 431, and where the public officer was not present to vote but had taken part in the preliminary negotiations, Stockton Plumbing and Supply Co. v. Wheeler, supra.

■ Respondent argues that this Court lacks jurisdiction entirely to determine this matter or, in its sound discretion, ought not to exercise its jurisdiction. It is urged that there is another action pending in the Superior Court of Maricopa County between respondent and the State Retirement Board in which the Retirement Board, as cross claimant, seeks to recover the profits which Associated Mortgage and Investment Company made out of the prohibited contract, and that the action in this Court constitutes a splitting of the State's cause of action against Bohannan prohibited by the Rules of Civil Procedure.

In this, respondent's position is wholly without merit. The original jurisdiction of the Supreme Court is fixed by the Constitution, supra, and in matters of public importance such as this we will take jurisdiction regardless of whether one of the parties has invoked the jurisdiction of an inferior tribunal.

Moreover, the petition here is not a splitting of a cause of action. The parties in the superior court are Bohannan and others against the State Retirement Board. The action here is against Bohannan by the State of Arizona. The State and the State Retirement Board are individual legal entities. Both have the power to sue and be sued, each independent of the other. A.R.S. § 38–743. The State of Arizona is not a party to the suit in the superior court and would not be foreclosed by a judgment there from invoking the criminal penalties prescribed in § 38–447 or the civil disqualification from forever holding public office.

■ Respondent's principal argument in resisting quo warranto is predicated on the theory that there must be a previous criminal conviction for the offense prohibited by the statute before he is subject to the disqualification set forth in the last clause of § 38–447. He argues that when originally enacted by the Territorial Legislature in 1901 § 38–446 was contained in the civil code and § 38–447 was contained in the penal code; that only thereafter were the two sections brought together in subsequent revisions. The premise of respondent's argument is that where the constitution or statute of a state provides that a public office is forfeited upon the conviction of a public official for a criminal offense, the conviction is a prerequisite to any proceeding to remove the officer. This is, of course, the rule in Arizona, as elsewhere. State ex rel. DeConcini v. Sullivan, supra.

From this premise, respondent presses upon this Court a statement from an annotation in 119 A.L.R., at page 741. Since it embodies his theory of defense, we quote directly therefrom:

"Misconduct upon the part of a public officer is not of itself ground for forfeiting his office upon proceedings in quo warranto unless such misconduct has been already judicially established or unless the acts of misconduct charged are declared by statute ipso facto to work a forfeiture of his office."

■ Respondent's argument stems from the fact that his misconduct has not yet been judicially established. We think, however, that the correct rule is stated in State ex inf. McKittrick v. Wymore, 343 Mo. 98, 119 S.W.2d 941, 119 A.L.R. 710. There the Court held:

"The rule is stated by standard texts as follows:

" 'Quo warranto will also lie for the purpose of ousting an incumbent whose title to the office has been forfeited by misconduct or other cause. And in such a case it is not necessary that the question of forfeiture should ever before have been presented to any court for judicial determination, but the court, having jurisdiction of the quo warranto proceeding, may determine the question of forfeiture for itself. The question must, however, be judicially determined before he can be ousted. * * *' Mechem, Public Officers, Sec. 478, p. 308."

In the present case, respondent has admitted the acts which the legislature has prohibited. He has acknowledged that the transactions were consummated while he was a member of the Arizona Retirement Board and president and director of the Associated Mortgage and Investment Company. This is, in effect, a determination of those facts. We are not constrained to hold that this Court, upon the admission before it of a public offense, is so impotent as to be unable to apply the civil penalty of dis-

qualification expressly provided by the legislature.

■■ Respondent interprets § 38–447 as meaning that an officer who violates the statute shall be punished by disqualification from public office only after a criminal conviction for the offenses prohibited. We do not so construe it. Courts will not read into a statute something which is not within the manifest intent of the legislature as gathered from the statute itself. State ex rel. Morrison v. Anway, 87 Ariz. 206, 349 P.2d 774.

The statute, § 38–447, supra, does not provide that the officer shall be forever disqualified from holding an office upon conviction of a felony as do many statutes. See A.R.S. § 38–291. In essence, it provides two consequences for its violation: (1) A fine or imprisonment and (2) disqualification from forever holding public office. Before a fine or imprisonment may be imposed by a court, due process requires a criminal proceeding ending in a conviction. Before a disqualification can be imposed against holding a public office, all that the language of the statute requires is a judicial determination of the fact upon which the disqualification rests.

"The general rule with respect to a public official is that eligibility to hold office is of a continuing nature and must exist not only at the commencement of the term but during the occupancy of the office. Some of the courts of other states hold that the date of election or appointment is the time to test eligibility to hold office. But most of the courts hold that even though a candidate is qualified at the time of his election this is not sufficient to entitle him to qualify and continue to hold office, if, at the commencement of the term, or during the continuance of the incumbency, he ceases to be qualified." Valle v. Pressman, 229 Md. 591, 185 A.2d 368, 377.

■ The principle has been accepted and applied under varying situations that where a constitution or statute creates a

qualification for an office the subsequent loss of the qualification constitutes valid grounds for removal of the officer. See State ex rel. Coe v. Harrison, 217 Ala. 80, 114 So. 905; Helwig v. Payne, 197 Cal. 524, 241 P. 884; Jeffries v. Rowe, 63 Ind. 592; State ex rel. Anderson v. Stice, 186 Kan. 69, 348 P.2d 833; State ex rel. Gray v. Pipes, 173 La. 488, 137 So. 862; State ex rel. Patterson v. Land, 231 Miss. 529, 95 So.2d 764, 96 So.2d 828; State ex rel. Johnston v. Donworth, 127 Mo.App. 377, 105 S.W. 1055; State ex rel. Good v. Marsh, 125 Neb. 125, 249 N.W. 295; State ex rel. McMillan v. Sadler, 25 Nev. 131, 58 P. 284, 59 P. 546, 63 P. 128; State ex rel. Attorney General v. Orr, 61 Ohio St. 384, 56 N.E. 14; Commonwealth ex rel. v. Yeakel, 13 Pa.Co.Ct. 615; State ex rel. Willis v. Monfort, 93 Wash. 4, 159 P. 889, L.R.A.1917B, 801; State ex rel. Fugina v. Pierce, 191 Wis. 1, 209 N.W. 693.

The Supreme Court of Pennsylvania long ago, in 1876, concluded, in disposing of a similar argument that a prior conviction was necessary before the disqualification provisions of a statute were applicable:

"So that by the time the Commonwealth had followed the defendant to the end of his sinuous path, the contest might become of little real importance, and the victory, if obtained, a barren one." Commonwealth v. Walter, 83 Penn.St. 105, 24 Am.Rep. 154.

Since respondent is not eligible to hold his present office by reason of his prior admitted misconduct, we have no alternative but to order his removal.

It is the judgment of this Court that respondent's motion to quash is overruled, and that respondent, Robert C. Bohannan, Jr., be and he is hereby declared excluded from the office of a member of the State Board of Public Welfare for the remainder of the term ending January 31, 1967, and is forever disqualified from holding any public office in this state.

Note: Vice Chief Justice CHARLES C. BERNSTEIN, having disqualified himself, did not participate in this decision.