612 P.2d 223

STATE of New Mexico ex rel. Donaldo
A. MARTINEZ et al.,
Plaintiffs-Appellees,

v.

Filiberto PADILLA and Pete Garcia,
Defendants-Appellants.

No. 12308.

Supreme Court of New Mexico.

May 26, 1980.

Solomon, Roth & VanAmberg, F. Joel Roth, Ronald J. VanAmberg, Santa Fe, for defendants-appellants.

Jones, Gallegos, Snead & Wertheim, Steven L. Tucker, Santa Fe, for plaintiffs-appellees.

## OPINION

SOSA, Chief Justice.

This suit is in the nature of a quo warranto action, brought by the plaintiffs to challenge defendants' title to office on the board of education of the West Las Vegas School District. The district court entered judgment against defendants Pete Garcia and Filiberto Padilla, and dismissed the complaint as to defendant Ray Leger, and entered judgment in favor of defendant Rudolfo Roybal. Defendants Garcia and Padilla appeal. We affirm.

The issues we decide are (1) whether the trial court had jurisdiction in a quo warranto action to remove school board members from office for the acts alleged, (2) whether the alleged acts constituted use of public monies not authorized by law, (3) whether there is substantial evidence to support the trial court's findings that defendants committed the allegedly unlawful acts, and (4) whether the acts of defendants had to occur during their present term in order to be removed from office.

The plaintiffs alleged that defendants Garcia and Padilla forfeited and became ineligible to hold public office because they had profited from or caused the misuse of public monies, contrary to N.M.Const. Art. VIII, § 4 and Section 22–8–42(B), N.M.S.A. 1978. The acts found to have occurred were essentially these:

1. Defendants approved the payment of public monies for the round-trip fare of Arabella Padilla from Albuquerque to San Francisco though she was not a member of the Board and the money had not been appropriated for that purpose. Arabella Padilla is the wife of defendant Padilla.

2. Defendants approved of and caused public monies to be used for the purchase of gasoline from defendant Garcia, though the money had not been appropriated for that use.

3. Defendant Padilla caused payment of public monies to be made to his wife, Arabella Padilla, for substitute teaching when in fact she did not substitute teach.

4. Defendant Padilla knowingly received payment from public funds for services rendered to Luna Vocational Technical Institute, when in fact he did not perform the services.

I. The defendants argue that the trial court had no jurisdiction to disqualify them from office under the New Mexico Constitution. N.M.Const. Art. VII, § 2 states that all qualified electors are qualified to hold public office except as otherwise provided in the constitution. The constitution then "otherwise provides," by disqualifying felons (Art. VII, § 1), by providing for the recall of school board members (Art. XII, § 14), and by Art. VIII, § 4, which states:

Any public officer making any profit out of public moneys or using the same for any purpose not authorized by law, shall be deemed guilty of a felony and shall be punished as provided by law and shall be disqualified to hold public office.

The defendants argue that under these sections, a public officer can be removed only by a recall election or because of a felony conviction, but not by quo warranto where there has been no felony conviction. We disagree. N.M.Const. Art. VIII, § 4, does not require that a public officer be convicted of a felony before he can be disqualified, but merely requires a judicial finding that the officer has knowingly misused public funds. Each sanction described by Art. VIII, § 4 is separate and distinct; disqualification is not dependent on a felony conviction. *See State v. Bohannan*, 101 Ariz. 520, 421 P.2d 877 (1966). This construction is consistent with legislative enactments. Section 22–8–42(D), N.M.S.A.1978, of the Public School Finance Act states that a person who has misused public funds "shall in addition to all other civil or criminal penalties, forfeit his office or em-

ployment." This section makes it clear that a person who violates a provision of the Public School Finance Act, Sections 22–8–1 to 42, N.M.S.A.1978, is subject to civil penalties, criminal penalties and disqualification from office, and that disqualification is not dependent on the prior imposition of a criminal penalty. We are persuaded that the same construction applies to N.M.Const. Art. VIII, § 4. One need not be found guilty of a felony to forfeit and be disqualified from office under the New Mexico Constitution and Section 22–8–42(D). *See State v. Bohannan, supra; State v. Wymore,* 343 Mo. 98, 119 S.W.2d 941 (1938); *Commonwealth v. Allen,* 70 Pa. 465 (1872).

■ Defendants further contend that a recall election under N.M.Const. Art. XII, § 14 is the exclusive means by which an officer can be removed for misfeasance or malfeasance. But as we have stated, an officer can be disqualified under N.M.Const. Art. VIII, § 4 for misuse of public funds, as determined by the criteria of Section 22–8–42(D). An action in quo warranto is a proper method of "correcting the usurpation, misuser, or nonuser, of a public office or corporate franchise." J. High, *Extraordinary Legal Remedies* § 591 (3rd ed. 1896). Where the acts of the officer are said to work a forfeiture of the office, *ipso facto,* quo warranto is a proper remedy. *Id.* § 643; *see State v. Clevenger,* 69 N.M. 64, 364 P.2d 128 (1961). Though N.M.Const. Art. VIII, § 4 speaks of "disqualification" rather than "forfeiture," the terms are synonymous in this context, as both go to eligibility to hold office. *See Gibbany v. Ford, Mayor, et al.,* 29 N.M. 621, 225 P. 577 (1924). The defendants' acts were an *ipso facto* forfeiture, and the court has jurisdiction to remove public officers by a writ of quo warranto.

■ The defendants also argue the relators in this case are the wrong parties to bring an action alleging misuse of funds under Section 22–8–42. They contend that the secretary of finance and administration must bring the action. Section 22–8–42(E) states: "E. Legal proceedings for violation of the Public School Finance Act shall be instituted by the secretary of finance and administration."

The present case, however, is a quo warranto action which a private person may bring under certain conditions. Those conditions are set out in Section 44–3–4(C), N.M.S.A.1978:

When the attorney general or district attorney refuses to act, or when the office usurped pertains to a county, incorporated village, town or city, or school district, such action may be brought in the name of the state by a private person on his own complaint.

Here, the office pertains to a municipal school district, so it is clear that a private person may maintain the quo warranto action. The office is usurped because the officer is continuing in office even though the misuse of public funds amounts to a forfeiture or disqualification. *See State v. Clevenger, supra.*

The defendants also contend that the court lacked jurisdiction because of plaintiffs' failure to post bond under Section 44–3–5, N.M.S.A.1978. This claim is without merit. *State ex rel. Anaya v. McBride,* 88 N.M. 244, 539 P.2d 1006 (1975); *State ex rel. Besse v. District Court,* 31 N.M. 82, 239 P. 452 (1925).

■ II. The defendants' next point is that the acts which they allegedly committed did not constitute use of public monies not authorized by law. The district court found that defendant Garcia sold gasoline to school district vehicles, and that those sales violated Section 22–8–42(D) and Section 21–1–35, N.M.S.A.1978. Section 22–8–42(D) provides for the forfeiture from office of a person knowingly using money for purposes other than those for which it was appropriated. Section 21–1–35 provides that a school board member may not sell "school supplies" or receive any profit on account thereof, to any school or state education institution that he is connected with. Another statute, Section 22–21–1, N.M.S.A. 1978, provides much the same as Section 21–1–35 except that it was enacted later and allows for exceptions if the board mem-

ber making the sale does so under certain circumstances. The defendant claims that Garcia's sale falls within the exception provision of Section 22–21–1, and that the sale was therefore lawful because Section 22–21–1 impliedly repealed Section 21–1–35.

■ We do not reach the question of whether Section 21–1–35 has been repealed by implication because Garcia's sale of gasoline does not fall within the exception provision contained in Section 22–21–1. The two statutes are consistent with each other as applied.

Section 22–21–1(B) states:

The provisions of this section [22–21–1] shall not apply to a person making a sale in the regular course of his business who complies with the provisions of Sections 13–1–1 through 13–1–25 NMSA 1978.

We hold that the sale of gasoline by Garcia does not fall within the exception because it was not done in the "regular course of his business." We arrive at this conclusion in order to give effect to the intent of the Legislature. *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 568 P.2d 1236 (1977). It is not entirely clear what is meant by "regular course of business," but the obvious purpose of Sections 22–21–1 and 21–1–35 is to prevent a conflict of interest between school board members and the districts they are connected with. An exception is made if the sale to the district is made in the regular course of business, because such would not admit of any impropriety. The evidence here indicates that certain district bus drivers were essentially required to buy their gas at Garcia's station because he kept the district's credit card there. We believe that this is exactly the type of improper conflict the statute was designed to prohibit. The practice of requiring the drivers to go to his station does not fall within Garcia's "regular course of business." The defendants' approval of the expenditure of funds, and Garcia's profit therefrom, is contrary to Section 22–8–42(D) providing for forfeiture upon the misuse of public funds.

■ Defendants also argue that use of an airplane ticket by Arabella Padilla, paid for from school funds was not improper. Arabella Padilla is the wife of defendant Filiberto Padilla.

In April of 1976, tickets were purchased for four board members, including defendants, so they could attend a conference in San Francisco. Subsequently, one of the board members informed the superintendent that he could not attend the conference. The ticket was then given to Arabella Padilla, though the name and reservation was not changed. The trial court found that this expenditure violated Section 22–8–42(D) and Sections 10–8–1 to 7, N.M.S.A. 1978 of the Per Diem and Mileage Act. Defendants claim that the expenditure was proper because Filiberto Padilla is blind and epileptic and needed his wife along to assist him. It is clear to us however that this expenditure was not made in compliance with the Per Diem and Mileage Act, Section 10–8–1 to 7, because there was not a proper authorization. It was also in violation of Section 22–8–42(D). A forfeiture of the office by the members approving the use of money which was budgeted for other purposes was accordingly proper.

■ III. Defendant Padilla was also found to have knowingly caused payment to this wife, from public funds, for services which were never rendered. Padilla claims there is no substantial evidence to support this finding by the trial court. We disagree. The plaintiff's exhibits and the testimony of witnesses amply demonstrate that Ms. Padilla was paid for substitute teaching on days when the regular teacher was present, on Saturdays when school was not held, on the day she was in San Francisco, and on February 29, of 1977, when February did not have 29 days, 1977 not being a leap year. The testimony also demonstrates that defendant Padilla knew that payments were being made to his wife for services which were not rendered.

■ The trial court also found that defendant Padilla was paid for services to Luna Vocational Technical Institute, while a board member of the Institute, when in fact those personal services had not been

rendered. Padilla claims there was no substantial evidence to support this finding. We find that there is substantial evidence that Padilla received public monies for travel to meetings which were not in fact ever held.

■ IV. Defendant Padilla next contends that even if the alleged acts did occur, and would ordinarily constitute forfeiture, he cannot now be removed from his office because the acts did not occur in his present term of office. Because he was validly elected after forfeiture, he argues, the forfeiture no longer applies.

The constitution states that a person making any profit out of public monies or using the money for a purpose not authorized by law, shall be "*disqualified*" from holding public office. N.M.Const. Art. VIII, § 4. The *express* terms of the law render Padilla disqualified from holding public office, and re-election does not make him qualified. *See State v. Bohannan, supra.*

The evidence and the law supporting defendants' forfeiture of office, the judgment of the trial court is affirmed.

IT IS SO ORDERED.

PAYNE and FELTER, JJ., concur.