SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| ESTATE OF JACOB BRADEN, by and through its personal representative, TONYA GABALDON, | ) Arizona Supreme Court<br>) No. CV-10-0300-PR<br>) |
| Plaintiff/Appellant, | ) Court of Appeals<br>) Division One<br>) No. 1 CA-CV 08-0764 |
| v. | ) |
| THE STATE OF ARIZONA, a body politic; and THE DIVISION OF DEVELOPMENTAL DISABILITIES OF THE ARIZONA DEPARTMENT OF ECONOMIC SECURITY, a body politic, | ) Maricopa County<br>) Superior Court<br>) No. CV2006-006902<br>)<br>)<br>)<br>) **O P I N I O N** |
| Defendants/Appellees. | )<br>) |

Appeal from the Superior Court in Maricopa County
The Honorable F. Pendleton Gaines, Judge

**AFFIRMED**
_____

Opinion of the Court of Appeals Division One
225 Ariz. 391, 238 P.3d 1265 (2010)

**VACATED**
_____

KNAPP & ROBERTS, P.C.                                      Scottsdale
    By   Craig A. Knapp, Dana R. Roberts, and David L. Abney

    And

LAW OFFICE OF SCOTT E. BOEHM, P.C.                          Phoenix
    By   Scott E. Boehm

    And

WARNOCK, MACKINLAY & CARMAN, P.L.L.C.                      Prescott
    By   Krista M. Carman
Attorneys for the Estate of Jacob Braden and Tonya Gabaldon

1

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL          Phoenix
     By   Fred M. Zeder, Assistant Attorney General
          Michael G. Gaughan, Assistant Attorney General
          Daniel P. Schaack, Assistant Attorney General
Attorneys for State of Arizona and Arizona Department of
Economic Security Division of Developmental Disabilities
_____

**B R U T I N E L**, Justice

¶1          The issue in this case is whether the Adult Protective Services Act ("APSA"), A.R.S. § 46-455 (2011), subjects the state to an action for damages under that statute.  We hold that it does not and, therefore, affirm the superior court's summary judgment in favor of the State.

## I.

¶2          Jacob Braden, an adult with developmental disabilities, received services from Arizona Integrated Residential and Educational Services ("AIRES"), a licensed private corporation that contracted with the Arizona Department of Economic Security's Division of Developmental Disabilities to provide services for Jacob.  In 2005, Jacob died as a result of injuries suffered while residing at an AIRES facility.  Jacob's estate sued the State alleging a statutory claim under APSA for abuse and neglect.[1]

¶3          The State moved for summary judgment, arguing that it was not a proper defendant under A.R.S. § 46-455, and the trial

_____

1.   The Estate also sued AIRES and the Division of Developmental Disabilities of the Arizona Department of Economic Security, neither of which are parties to this appeal.

2

court granted the motion. In a split decision, the court of appeals reversed. *Estate of Braden v. State*, 225 Ariz. 391, 397–99 ¶¶ 24–36, 238 P.3d 1265, 1271–73 (App. 2010). The majority concluded that the State was not exempt from liability under § 46-455. *Id.* The dissent, however, would have affirmed the trial court's ruling, finding that "the legislature did not intend the State to be one of the enterprises included within A.R.S. § 46-455(B)." *Id.* at 399–400 ¶ 38 n.9, 238 P.3d at 1273–74 n.9 (Hall, J., dissenting).

¶4 We granted review because this case presents a recurring and purely legal issue of statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

### A.

¶5 We are not called on today to consider whether the state may be liable under a common law negligence theory or under Arizona's wrongful death statute, A.R.S. § 12-611. Nor do we consider the potential liability of individual state employees. This case concerns only the state's exposure to liability under APSA.

### B.

¶6 Section 46-455 is part of a statutory scheme that protects vulnerable adults by imposing criminal penalties on and

3

providing for civil enforcement against those who violate its terms. When first enacted in 1988, APSA provided only criminal penalties against certain "persons" who caused an incapacitated adult to be endangered, injured, or imperiled by neglect. 1988 Ariz. Sess. Laws, ch. 85, § 2 (2d Reg. Sess.). In 1989, the legislature amended the statute to add a civil cause of action. 1989 Ariz. Sess. Laws, ch. 118, § 3 (1st Reg. Sess.). The relevant provision, which is at issue here, now states:

> A vulnerable adult whose life or health is being or has been endangered or injured by neglect, abuse or exploitation may file an action in superior court against *any person or enterprise* that has been employed to provide care, that has assumed a legal duty to provide care or that has been appointed by a court to provide care to such vulnerable adult for having caused or permitted such conduct.

A.R.S. § 46-455(B) (emphasis added). Thus, the civil damages provision in § 46-455 expanded the scope of potential liability beyond "persons" to also include "enterprises" when the other elements of subsection (B) are established.

¶7    At the same time it created a civil damages action under APSA, the legislature broadened the statute to recognize the state's central role in both civil and criminal enforcement. APSA authorizes the state to file civil actions on behalf of vulnerable adults who are endangered or injured by neglect, abuse, or exploitation, § 46-455(E), and to intervene in any

4

private action that is of special public importance, § 46-455(M). Additionally, APSA requires the state to maintain an abuse registry regarding persons and enterprises against whom civil or criminal complaints have been filed for abuse, neglect, or exploitation of vulnerable adults. A.R.S. § 46-457(D).

## C.

¶8 Our goal "in interpreting statutes is to give effect to the intent of the legislature." *In re Estate of Winn,* 214 Ariz. 149, 151 ¶ 8, 150 P.3d 236, 238 (2007). "When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernable from the face of the statute." *State v. Christian*, 205 Ariz. 64, 66 ¶ 6, 66 P.3d 1241, 1243 (2003). Statutory terms, however, must be considered in context. *See State v. Wise,* 137 Ariz. 468, 470 n.3, 671 P.2d 909, 911 n.3 (1983).

¶9 Both the court of appeals majority and our dissenting colleagues correctly note that because APSA is remedial in nature, it warrants a broad interpretation. But "[a] liberal construction is not synonymous with a generous interpretation," *Nicholson v. Indus. Comm'n*, 76 Ariz. 105, 109, 259 P.2d 547, 549 (1953), and we will not impose "[a] burden or liability not within the terms or spirit of the law," *Goodyear Aircraft Corp. v. Indus. Comm'n*, 62 Ariz. 398, 402, 158 P.2d 511, 513 (1945).

5

¶10      We first examine APSA's language to determine if it has a plain meaning and clearly reflects the legislature's intent.  As explained below, we conclude that its meaning is not entirely clear.  The text of § 46-455(B) permits an APSA action to be filed against a person or an enterprise.  APSA does not define the term "person," but, as the Estate acknowledges, the general statutory definition of that word would not include the state.  *See* A.R.S. § 1-215(29) (defining "person" as including "a corporation, company, partnership, firm, association, or society, as well as a natural person"); *see also State ex rel. Dep't of Health Services v. Cochise County*, 166 Ariz. 75, 800 P.2d 578 (1990) (holding that the state is not a "person" required to file a pre-lawsuit claim against a county under A.R.S. § 11-622).  Because the state is not a person, it can be liable under APSA only if it is an "enterprise."

¶11      The legislature defined "enterprise" for purposes of APSA, stating that it "means any corporation, partnership, association, labor union *or other legal entity*, or any group of persons associated in fact although not a legal entity, that is involved with providing care to a vulnerable adult."  § 46-455(Q) (emphasis added).  The state is not a corporation, partnership, association, or group of associated persons that is not a legal entity; therefore, the state is subject to suit under APSA only if it is included in the term "other legal

6

entity." A "legal entity" is "[a] body, other than a natural person, that can function legally, sue or be sued, and make decisions through agents." Black's Law Dictionary 976 (9th ed. 2009). Generally, and as the dissent correctly notes, the state is thought of as a "legal entity."[2] If we were to construe the words "legal entity" in isolation, we would readily conclude that the state is an enterprise.

¶12 We do not, however, consider words in isolation when interpreting statutes. *See Adams v. Comm'n on Appellate Court Appointments*, 227 Ariz. 128, __ ¶ 34, 254 P.3d 367, 375 (2011) (citing *Deal v. United States*, 508 U.S. 129, 132 (1993)). Importantly, the legislature did not create "other legal entity" as an independent and isolated category in its definition of "enterprise." It defined enterprise, in part, as a "labor union or other legal entity" rather than "labor union, or other legal entity." The absence of a comma after the phrase "labor union" makes a difference. Syntactically, this suggests "other legal entity" does not function as an independent catch-all category,

---

[2] The case the dissent cites for that general proposition, however, is inapposite because it did not involve interpretation of a statute containing the phrase "legal entity." *See State ex rel. Smith v. Bohannan*, 101 Ariz. 520, 523, 421 P.2d 877, 880 (1966) (finding no impermissible splitting of a cause of action in state's quo warranto action because the state is a separate legal entity that has power to sue).

but instead relates to legal entities like labor unions.[3] Because the state is not a legal entity like a labor union, we conclude it is not the kind of "other legal entity" to which the legislature intended to refer.

¶13 Likewise, to the extent the text of § 46-455 is not clear, applicable canons of statutory construction support construing "enterprise" in § 46-455(Q) as not including the state. The phrase "other legal entity" in subsection (Q) follows the enumeration "corporation, partnership, association, [or] labor union" – all terms that are normally understood to refer to business organizations. *Ejusdem generis* dictates that "general words [that] follow the enumeration of particular classes of persons or things should be interpreted as applicable only to persons or things of the same general nature or class." *State v. Barnett*, 142 Ariz. 592, 596, 691 P.2d 683, 687 (1984). Similarly, *noscitur a sociis* – a canon closely related to *ejusdem generis* – dictates that a statutory term is interpreted

---

[3]   We acknowledge that the 2011-2012 Arizona Legislative Bill Drafting Manual advises against using a comma before the conjunction "or." The Arizona Legislature Bill Drafting Manual § 5.10, at 83 (2011-2012). But we think for a couple of reasons that the omission of this comma is substantive and not merely stylistic. First, a comma once existed between "labor union" and "other legal entity," but the comma was deleted in a 2009 amendment. *See* 2009 Ariz. Sess. Laws 119, § 8 (1st Reg. Sess.). Second, despite the Manual's guidance that a comma should not precede the word "or," the legislature preceded the very next "or" in this subsection with a comma. § 46-455(Q) ("labor union or other legal entity, or any group of persons associated in fact although not a legal entity . . .").

in context of the accompanying words. *See Planned Parenthood Comm. of Phoenix, Inc. v. Maricopa Cnty.*, 92 Ariz. 231, 235–36, 375 P.2d 719, 722 (1962). Because the phrase "other legal entity" follows specifically enumerated (and generally private) business entities, the phrase is most reasonably interpreted as applying to such entities rather than to governmental bodies.

¶14     The dissent correctly notes that the definition of "enterprise" in § 46-455(Q) is not expressly limited to business entities and that "the term 'corporation' may embrace both private and public entities."[4] *Infra* ¶ 31. But the Estate does not argue, nor does the dissent suggest, that the state is a corporation for purposes of APSA.[5] And unlike § 46-455(Q)'s

---

[4]   As the dissent points out, APSA's definition of "enterprise" is substantially similar to the definition used in federal racketeering statutes (RICO), and federal courts have broadly construed the term to include public entities. *Infra* ¶ 24. But Congress apparently intended to include public bodies within the term "enterprise" for federal RICO purposes. *See United States v. Thompson*, 685 F.2d 993, 1000 (6th Cir. 1982) (discerning from the Congressional Record a "great Congressional concern with organized crime's infiltration of or domination of various aspects of national, state and local governments"). In contrast, nothing in APSA's legislative history indicates any intent to subject the state to civil liability or mentions either state or federal case law construing "enterprise" for RICO purposes.

[5]   Although the word "corporation" may logically encompass municipal, public corporations, this definitional nuance does not give us pause. Our opinion today does not turn on the state's status as a "public entity," but rather on the lack of apparent legislative intent to include it in an express list of potential defendants. Therefore, the possibility that a reasonable reading of APSA might include as a potential

9

definition of "enterprise," other statutes differentiate between public and private entities and expressly mention both. *See*, *e.g.*, A.R.S. §§ 13-105(29), 13-1601.

¶15       Indeed, our legislature has repeatedly demonstrated its ability to specifically mention public actors when it intends their inclusion in a list that uses the general category of "legal entity." *See, e.g.*, A.R.S. § 12-715 (excluding from liability "[a] person, a public entity or any other legal entity" that donates fire equipment); A.R.S. § 27-129(G) (limiting liability of "a person, public entity or other legal entity" that makes donations for abandoned mines); A.R.S. § 44-140(3) (defining "person" for purposes of student loan statute as "individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, or any other legal entity"); A.R.S. § 45-251(3) (defining "person" for purposes of water adjudication as "an individual, a partnership, a corporation, a municipal corporation, the [S]tate of Arizona, or any political subdivision, the United States of America, an Indian tribe or a community or any other legal entity, public or private"); A.R.S. § 49-961(5) (defining "person" in hazardous waste prevention statute as "an individual, the United States, this state or a

defendant a municipality, a public entity, is not instructive on the question of whether the state is an "enterprise."

10

public or private corporation, local government unit, public agency, partnership, association, firm, trust or estate or any other legal entity").[6] This consistent pattern persuades us that if the legislature had intended to include the state within its definition of "enterprise" in § 46-455(Q), it would have expressly done so. *Cf. Estate of McGill v. Albrecht*, 203 Ariz. 525, 530-31 ¶ 20, 57 P.3d 384, 389-90 (2002) (rejecting claim that APSA requires proof of gross negligence, noting that "[t]he legislature surely knows how to require a showing of gross negligence, having used that term in a great number of statutes").

¶16    The dissent also suggests that because governmental immunity is the exception and not the rule in Arizona, *see Stone v. Ariz. Highway Comm'n*, 93 Ariz. 384, 392, 381 P.2d 107, 112 (1963), the state should be subject to APSA liability unless the legislature expressly excludes it. *Infra* ¶ 37.  But when a statute, such as APSA, "'specifically limits those who may be held liable for the conduct described by the statute, the courts cannot extend liability . . . to those who do not fall within

_____

[6]  If the phrase "other legal entity" in statutes such as those cited above generally includes public entities like the state, the legislature's insertion of the additional phrase "public entity" in those same statutes would be superfluous.  In interpreting statutes, however, "[e]ach word, phrase, clause, and sentence must be given meaning so that no part will be void, inert, redundant, or trivial."  *City of Phoenix v. Yates*, 69 Ariz. 68, 72, 208 P.2d 1147, 1149 (1949).

11

the categories of potential defendants described by the statute,'" *Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F. Supp. 1028, 1034 (D. Minn. 1981) (quoting *In re Equity Funding Corp. of Amer. Sec. Litig.*, 457 F. Supp. 1135, 1143 (N.D. Cal. 1978)); *see Pinter v. Dahl*, 486 U.S. 622, 641-47 (1988) (clarifying class of potential defendants before imposing liability under federal securities law).

¶17    If, as we conclude, the legislature did not intend to include the state in its expressly enumerated list of potential APSA defendants, neither the general abrogation of governmental immunity nor the narrow construction given to immunity provisions has any bearing on the issue here. After all, this case involves a statutory cause of action, not a "statute [that] limits common-law liability." *Ward v. State*, 181 Ariz. 359, 362, 890 P.2d 1144, 1147 (1995). Immunity principles cannot create state statutory liability where none would otherwise exist. *See Turner v. Superior Court*, 3 Ariz. App. 414, 417, 415 P.2d 129, 132 (1966) ("The abrogation [of governmental immunity] does not work an automatic cancellation of specific legislative enactments."); *cf.* 3 Sutherland Statutory Construction § 62:1 (7th ed. 2011) ("Statutory provisions which are written in such general language that they are reasonably susceptible to being construed as applicable both to the government and to private parties are subject to a rule of construction which exempts the

12

government from their operation in the absence of other particular indicia supporting a contrary result in particular instances. . . . [T]he rule has been most emphatically stated and regularly applied in cases where it is asserted that a statute makes the government amenable to suit.").

¶18    Not only do we think the text fails to evidence an intent to include the state as a defendant, construing § 46-455(Q) as including the state within APSA's definition of "enterprise" results in some tension with the statute's enforcement scheme, which charges the state with enforcing the act and protecting the rights of vulnerable adults. Despite expressly obligating the state to enforce APSA, the legislature did not mention public entities in its list of potential defendants. *See* § 46-455(B). Nor does the statutory scheme address, or seemingly contemplate, the conflict of interest that could arise if the state, which bears the primary responsibility for enforcing APSA, becomes a defendant under it. Rather, APSA's enforcement scheme suggests the legislature did not intend to include the state as a potential defendant. *See* *Estate of Braden*, 225 Ariz. at 401 ¶ 42, 238 P.3d at 1275 (Hall, J., dissenting) ("[H]ad the legislature intended . . . to make the State and its agencies liable for damages at the same time it was granting primary enforcement power to the State, it would have clearly stated so."). Although we agree that the state

13

could subject itself to liability under a statutory scheme it also enforces, when it has done so, it has made this intent express. *See, e.g.*, A.R.S. §§ 41-1492.01, 41-1492.06, 41-1492.08 (expressly subjecting the state to suit under Arizona civil rights statute, which is enforced through the attorney general).

¶19 Finally, in the very statute at issue here, the legislature expressly and specifically referred to the state or its authorized agent, the attorney general, several times. *See* A.R.S. § 46-455(E), (J), (M), (N). Given those explicit references, it would be rather odd to conclude that the legislature meant to implicitly include the state in subsection (Q)'s general, catchall phrase "other legal entity."

¶20 The legislature, of course, may create state liability in APSA cases. But in light of its failure to expressly include the state or any public actor as a potential defendant, its specific references to the state in § 46-455 and other statutes in which public entities' inclusion is intended, and APSA's reliance on state involvement in enforcement, we cannot conclude that the legislature intended to do so here.

### III.

¶21 For the reasons stated, we vacate the opinion of the court of appeals and affirm the superior court's grant of summary judgment in favor of the State.

14

_____
Robert M. Brutinel, Justice


CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
A. John Pelander, Justice


**B A L E S**, Justice, dissenting

¶22      I respectfully dissent.  APSA imposes civil liability on "any person or enterprise" that is employed or assumes a legal duty, or is appointed by a court, to provide care and that causes or permits a vulnerable adult to be endangered or injured by neglect, abuse, or exploitation.  A.R.S. § 46-455(B).  "Enterprise" includes any "legal entity," *id.* § 46-455(Q), and the state is a legal entity under Arizona law.  Given APSA's language and remedial purpose, the Court should hold that the state will be liable for damages if it endangers or injures a vulnerable adult in violation of § 46-455(B).

¶23      As the majority recognizes, Op. ¶ 8, we should interpret statutes to give effect to the legislature's intent.  Before APSA's enactment, care providers that abused vulnerable adults faced common law tort liability and possibly criminal penalties for offenses such as assault.  Concluding that these

15

sanctions were insufficient, the legislature adopted APSA in 1988 but originally provided only criminal penalties for any "person" who violated the statute.  1988 Ariz. Sess. Laws, ch. 85, § 2.  The very next year, the legislature amended APSA to also recognize a civil cause of action against "any person or enterprise."  The statute provides:

> A vulnerable adult whose life or health is being or has been endangered or injured by neglect, abuse or exploitation may file an action in superior court against *any person or enterprise* that has been employed to provide care, that has assumed a legal duty to provide care or that has been appointed by a court to provide care to such vulnerable adult for having caused or permitted such conduct.

A.R.S. § 46-455(B) (emphasis added).

¶24    Underscoring that civil liability under APSA extends broadly, the legislature defined enterprise to mean "*any* corporation, partnership, association, labor union *or other legal entity*, or any group of persons associated in fact although not a legal entity, which is involved with providing care to an incapacitated or vulnerable adult."  A.R.S. § 46-455(Q) (emphasis added).   APSA's definition of "enterprise" echoes the definition used in the federal racketeering statutes, a definition that federal courts had broadly construed to include public entities. *United States v. Long*, 651 F.2d 239, 241 (4th Cir. 1981); *United States v. Angelilli,* 660 F.2d 23, 33

16

(2d Cir. 1981).

¶25 There is no doubt that the state is a "legal entity" under Arizona law. *See State ex rel. Smith v. Bohannan*, 101 Ariz. 520, 523, 421 P.2d 877, 880 (1966) (describing the state as a legal entity). This fact, combined with APSA's broad language, indicates that the state can be liable under the statute. Although conceding that the state generally is a legal entity, the majority concludes that the state is not a legal entity for purposes of APSA. Op. ¶ 11-12.

¶26 Observing that statutory words cannot be read in isolation, Op. ¶ 12, the majority first contends that the phrase "any corporation, partnership, association, labor union or other legal entity" suggests that the term "legal entity relates to entities like labor unions." *Id.* But this reasoning does not construe "legal entity" in light of APSA's surrounding language – which, after all, provides that "any enterprise" may be liable and that "enterprise" encompasses not only any legal entity but also any other group of people associated in fact. A.R.S. § 46-455(Q). Instead, the majority seeks to narrow the scope of "legal entity" by relying on the absence of a serial comma after "labor union."

¶27 The absence of a comma sheds no light on the meaning of "legal entity" under APSA. The majority evidently believes that because a serial comma distinguishes items in a series, *see*

17

*e.g.* William Strunk, Jr. & E.B. White, *The Elements of Style* 2 (4th ed. 1999) ("In a series of three or more terms with a single conjunction, use a comma after each term except the last."), the omission of a comma allows the final entries (here "labor union" and "other legal entity") to be read as one category. *Cf.* Bryan A. Garner, *The Oxford Dictionary of American Usage and Style* 70 (2000) (advising that the omission of a serial comma allows the final entries to be "joined" or "read as one category"). Whatever force this argument may have in other contexts, it is singularly unconvincing with respect to APSA's definition of "enterprise."

¶28 Although the use of a serial comma may desirably avoid ambiguity, grammarians disagree whether the penultimate entry in a series should be followed by a comma. *See* Bryan A. Garner, *Garner's Modern American Usage* 654 (2003). *Cf.* Bill Walsh, *Lapsing into a Comma* 81 (2000) (noting newspaper convention of omitting serial commas). More importantly, the style manual for Arizona's legislature expressly advises that a comma should not be inserted before the conjunction "or" at the end of a series of items. *See* The Arizona Legislative Bill Drafting Manual 2011-12 at 83; The Arizona Legislative Bill Drafting Manual 2009 at 81. Discounting the legislature's own style conventions, the majority asserts that the omission of a serial comma here "is substantive and not merely stylistic." Op. ¶ 12 n.2. (Contrary

18

to the majority's suggestion, *id.*, the comma preceding "or any group of persons associated in fact although not a legal entity" is not a serial comma; it does not come before the last item in the series of legal entities.)

¶29      The history of the amendments to APSA confirms that the omission of a comma before "or other legal entity" has no substantive import.  From 1989 until 2009, the definition of "enterprise" included a comma after "labor union" and before "or other legal entity."  In 2009, the legislature amended APSA, primarily to expand civil liability for the financial exploitation of vulnerable adults or theft, but also to make certain technical and conforming changes.  Arizona State Senate, Fact Sheet for H.B. 2344, 49th Leg., 1st Reg. Sess. (June 24, 2009).  For example, the legislature defined "vulnerable adults" to include certain "incapacitated persons" and changed previous references to "incapacitated or vulnerable adults" to instead say "vulnerable adults."  *See* 2009 Ariz. Sess. Laws 119, § 4 (1st Reg. Sess.).  Apart from this change, the 2009 amendments changed the definition of "enterprise" in two ways: substituting a "that" for a "which" and omitting the comma after "labor union."  *See id.* § 8.

¶30      The change in the comma was obviously non-substantive. To conclude otherwise implausibly suggests that when the legislature expressly expanded civil liability under APSA, it

19

also silently narrowed the field of potential "other legal entity" defendants to only those somehow related to labor unions. *Cf.* Op. ¶ 12 n.2 (recognizing that 2009 amendments deleted comma). We should not infer that the legislature "hide[s] elephants in mouseholes," *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001), much less in the deletion of a comma.

¶31 In determining that the state is not a legal entity for purposes of APSA, the majority also resorts to *ejusdem generis*, reasoning that "because the phrase 'other legal entity' follows specifically enumerated (and generally private) business entities, the phrase is most reasonably interpreted as applying to such entities rather than to governmental bodies." Op. ¶ 13. This argument fails, however, because the entities specifically enumerated in the statute are not limited to business entities, whether private or public, but include, among other things, *any* corporation or association. *See* A.R.S. § 46-455(Q). Under Arizona law, the term "corporation" may embrace both private and public entities. *See Sumid v. City of Prescott*, 27 Ariz. 111, 114-16, 230 P. 1103, 1105 (1924) (holding that "corporation" under Employers' Liability Law includes municipal corporations). Indeed, under long-settled case law, *State v. Stone*, 104 Ariz. 339, 452 P.2d 513 (1969), the state may be liable in wrongful death actions, even though the underlying statute imposes

20

liability only on "persons" and "corporations." *See* A.R.S. § 12-611 (providing that "the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured").

¶32    Construing "legal entity" under APSA to include public entities like the state is also consistent with the statutory provisions imposing liability broadly on "any person or enterprise" and defining "enterprise" to include any group of persons associated in fact, whether or not a legal entity. This interpretation also comports with federal case law concluding that public entities may be "enterprises" under the federal racketeering statute, which defines "enterprise" in language similar to A.R.S. § 46-455(Q). *See, e.g.*, *Long*, 651 F.2d at 241 (holding in accord with majority of the federal courts that "RICO should be construed to include public entities as enterprises").

¶33    In short, neither *ejusdem generis* nor the principle that statutes should be construed in light of their surrounding words suggests that APSA's reference to legal entities excludes the state.

¶34    The majority also observes that the legislature has sometimes specifically listed the state or other public entities in statutes that refer to legal entities more generally. Op. ¶

21

14. This fact, however, does not imply that the state is only a legal entity if it is expressly so identified by statute. *See Bohannon*, 101 Ariz. at 523, 421 P.2d at 880 (noting, in a contractual dispute, that the state is a distinct legal entity with the power to sue and be sued). Instead, the statutory language cited by the majority suggests the legislature recognizes that public entities are included in but do not exhaust the class of legal entities. *See, e.g.*, A.R.S. § 12-715(A)-(B) (excluding from liability "[a] person, a public entity or any other legal entity" that donates fire equipment); A.R.S. § 27-129(F) (allowing donations from "any person, public entity or other legal entity"); A.R.S. § 45-251(3) (defining "person" for purposes of water adjudication to include "the state . . . or any other legal entity, public or private").

¶35 The majority also observes that "APSA's enforcement scheme suggests the legislature did not intend to include the state as a potential defendant." Op. ¶ 16. I disagree. There is nothing anomalous about subjecting the state to liability under a statutory scheme the state also enforces. *See, e.g.*, Arizona Disabilities Act, A.R.S. § 41-1492.01; A.R.S. § 49-961(5) (defining "person" in environmental statutory scheme to mean "an individual, the United States, this state or a public or private corporation, local government unit, public agency, partnership, association, firm, trust or estate or any other

22

legal entity"). The fact that the legislature assigned the state or the attorney general particular enforcement responsibilities or a right to intervene in private actions, *e.g.*, A.R.S. § 46-455(E), (J), (M), (N), also does not logically imply that the state cannot be civilly liable as a legal entity.

¶36 APSA provides for various remedies, some of which admittedly may not apply to the state. *See* A.R.S. § 46-455(H)(3) (providing for "dissolution or reorganization" of an enterprise in appropriate cases). But the fact that a particular defendant, whether the state or otherwise, may not be subject to every remedy does not suggest the defendant cannot be sued for damages. *Cf. United States v. Turkette*, 452 U.S. 576, 585 (1981) (declining to limit scope of "enterprise" in federal RICO statute based on potential unavailability of civil remedies as to certain entities). After all, a group of persons that is not a legal entity could not be dissolved or reorganized, but APSA subjects such a group to civil damage liability. APSA affords a menu of civil remedies allowing courts to tailor relief appropriate to the particular case.

¶37 The majority concludes by noting that the legislature could expressly subject the state to liability under APSA. Op. ¶ 18. Neither APSA nor Arizona law requires the legislature to specifically declare its intent to impose liability on governmental entities. Instead, Arizona governmental liability

23

is the rule and not the exception, reflecting our state's "overarching policy of holding a public entity responsible for its conduct." *Backus v. State*, 220 Ariz. 101, 104, ¶ 9, 203 P.3d 499, 502 (2009). In *Backus*, we declined to impose restrictions on state liability under A.R.S. § 12-820.01(A) greater than those compelled by the statutory language. *Id.* at 107, ¶ 23, 203 P.3d at 505. We observed that if the legislature had intended to impose such restrictions, it would have said so. A similar observation applies here: if the legislature had intended to exclude the state from the legal entities potentially liable under APSA, it could have said so.

¶38 This Court has recognized that APSA should be broadly construed in light of the legislature's remedial purpose of providing civil remedies to protect vulnerable adults. *See In re Estate of Winn*, 214 Ariz. 149, 150 ¶ 5, 150 P.3d 236, 237 (2007). Absent a clear indication that the legislature intended to shield the state from liability, we should hold that the state can be liable, because that interpretation comports with the statutory language, APSA's purpose, and our case law recognizing that the state is a legal entity.

¶39 Because I also agree with the court of appeals regarding the other issues presented, I would affirm that court's opinion reversing the summary judgment for the State and remanding to the trial court for further proceedings.

24

_____
                    W. Scott Bales, Justice

CONCURRING:


_____
Andrew D. Hurwitz, Vice Chief Justice